## First Coleman National Bank of Coleman, Texas.
## v. I. O. Shields.

No. 7984.  Decided December 9, 1942.
(166 S. W., 2d Series, 688.)

E. M. CRITZ, of Coleman, for petitioner.

The Court of Civil Appeals erred in holding, from the facts and circumstances of the case, that the jury could have concluded that the foreclosure by the bank, the conveyance by the trustee to the bank, and the resale of the notes to Shield and Wallace, that a consideration evidenced wholly by notes and the assignment of said notes to prearrange purchasers were steps in a single transaction whereby the original indebtedness was

taken up and extended and the bank made whole. Key v. Oates, 280 S. W. 286; Wills Point Bank v. Bates, 76 Texas 329, 13 S. W. 308.

*J. W. Chancellor, Donald & Donald,* all of Bowie, *Baker & Baker, Joe H. Cleveland,* of Coleman, for respondents.

The evidence showing that the full amount due on all the notes signed by Leon L. Shield, and others, so acquired by the bank has been fully paid by one of the makers thereof, no right of recovery exists to support the suit in question and to allow such is tantamount to legalizing a double recovery. Fairies v. Cockerill, 88 Texas 428, 31 S. W. 190; Chalk v. Collier, 208 S. W. 972.

MR. JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Petitioner, First Coleman National Bank of Coleman, Texas, hereinafter referred to as the Coleman bank, sued respondent, I. O. Shield for 6/25 of an alleged unpaid balance due on several notes owned by the bank. After trial before a jury the court withdrew the case from the jury and rendered judgment in favor of the bank against respondent I. O. Shield for $5,048.25. The Court of Civil Appeals reversed the judgment of the trial court and remanded the cause, holding that there was evidence from which the jury could have concluded that the original indebtedness was taken up and extended and the bank fully paid. 160 S. W. (2d) 277.

I. O. Shield, Leon L. Shield, Elgean Shield, Camille Shield Wallace, wife of Karl E. Wallace and Shield Brown, being the joint owners as heirs of L. L. Shield, deceased, of 2,571 acres of land in Coleman County, on November 22, 1929, borrowed $32,000.00 from F. O. Ketchum Mortgage Company and executed therefor six principal notes aggregating that amount, secured by first deed of trust lien on the land, and another note for $3,160.00, representing interest and secured by second lien. The money borrower was divided among the five heirs who made the notes in proportion to the interests that they owned in the land, I. O. Shield receiving 6/25. The first three of the principal notes were paid. The mortgage company, on February 21, 1930, assigned the other three principal notes, being in the total amount of $22,400.00, to the Kansas City Life Insurance Company.

In the year 1933 Leon L. Shield executed to a trustee for the Coleman bank a deed of trust conveying his undivided 6/25 interest in the 2,571 acres of land to secure his two notes for the total principal sum of $35,318.00. After the death of Leon L. Shield his independent executor, by deed dated September 14, 1937, and by a deed of confirmation dated October 26, 1938, conveyed to the Coleman bank the undivided 6/25 interest in the land that had been owned by Leon L. Shield and the bank in consideration of the conveyances so made to it released the estate of Leon L. Shield from all liability on the notes that he had given to the bank.

Kansas City Life Insurance Company, on October 25, 1937, assigned to the Coleman bank an indebtedness of $4,123.38 arising against the Shield heirs on account of payments of taxes made by the life insurance company and unpaid interest due on the principal notes; and the mortgage company, on February 23, 1938, assigned to the Coleman bank the interest for $3,160.00 secured by second lien.

The three notes aggregating $22,400.00 executed by the Shield heirs and on which this suit is brought were by assignment dated February 24, 1938, transferred by Kansas City Life Insurance Company to the Coleman bank, which declared all of the notes due, appointed a substitute trustee, caused an undivided 19/25 interest in the land to be sold at trustee's sale on April 5, 1938, and bought the said undivided interest in the land for $10,000.00, which was credited on the debt.

The Coleman bank, on October 13, 1938, by general warranty deed conveyed the 2,571 acres of land to Elgean Shield and his wife and Karl Wallace and his wife. The recited consideration for this conveyance was the execution by the grantees of twenty vendor's lien notes aggregating $30,000.00, payable to Mrs. Lilian Seeligson Winterbotham, and four vendor's lien notes aggregating $2,000.00, payable to Brown Brothers. Elgean Shield procured the $32,000.00 in cash from Mrs. Winterbotham and Brown Brothers and paid it to the Coleman bank.

The judgment rendered by the district court against respondent is for 6/25 of the balance of the principal, interest and attorney's fees due on the three principal notes aggregating $22,400.00, after crediting 19/25 of the amount due

on said notes April 5, 1938, with $10,000.00, together with 6/25 of the principal, interest and attorney's fees due on the interest note for $3,160.00, secured by second lien.

The Court of Civil Appeals, as has been said, concluded that, from the facts and circumstances in evidence, the jury could reasonably have inferred that the foreclosure by the bank, the resale by it to Elgean Shield and Wallace for a consideration evidenced wholly by notes, and the immediate assignment thereof· to prearrange purchasers were steps in a single undertaking by which the original indebtedness was taken up and fully paid. The Coleman bank challenges this conclusion on three grounds: First, because the conclusion is the decision of a question not raised in the trial court by respondent and not presented by assignment of error in the Court of Civil Appeals; second, because the record contains undisputed evidence showing that the bank, for the conveyance to Elgean Shield and Wallace, was not paid the full amount of the indebtedness which it held secured by liens against the land; and, third, because the conveyance to Elgean Shield and Wallace was the sale of the land which the bank as owner thereof had the right to make at whatever price is desired.

■ The answer filed in trial court by respondent contains many allegations, making in a somewhat informal manner a number of defenses, and the several defenses are not distinctly and separately presented. We find in it, however, allegations which, though they seem to relate in part at least to other theories of defense, may fairly be considered sufficient to present the defense that a deficiency judgment cannot be taken against respondent because the bank, in transactions with Elgean Shield and from payments made to it by him, has received full payment in satisfaction of the original obligation for which respondent was bound.

A paragraph of respondent's motion for new trial and the first proposition in his brief in the Court of Civil Appeals complain of the trial court's judgment, and assert that the bank has no right of recovery in the suit, because the evidence shows that the full amount due on all of the notes executed by the Shield heirs and acquired by the bank was paid by one of the makers of the notes. We cannot sustain the contention that the Court of Civil Appeals in the reversal of the trial court's judgment decided a question not raised and not presented by respondent.

The Court of Civil Appeals did not find that the Coleman bank received full payment of all of the indebtedness that it had held, secured by liens against the land, in its transaction with Elgean Shield whereby he paid the bank $32,000.00 in cash and the bank conveyed the land to him. The finding was that under the undisputed testimony the bank in its receipt of the $32,000.00 from Elgean Shield "was repaid all the money it had been out in connection with the various transactions connected with the 1929 loan." That loan was the loan made to the Shield heirs by the Ketchum Mortgage Company and evidenced by the notes, all of which, except the first three that had been paid, were assigned to the bank. Elgean Shield testified that with the money which he obtained from Mrs. Winterbotham and Brown Brothers he paid the Coleman bank the entire amount owing on the Kansas City Life Insurance Company loan, the Ketchum loan. S. H. Gray, vice-president of the Coleman bank, testified that the agreement finally made with Elgean Shield was he should pay for the land all of the money that the band had paid out for the Shield heirs and also an agreed amount representing the equity that the bank had acquired from the estate of Leon L. Shield.

■ The transaction between the bank and Leon L. Shield, in which it took notes from him in the total principal sum of $35,318.00 and he gave them a deed of trust lien on his undivided 6/25 interest in the 2,571 acres of land, was separate and distinct from the original loan to the Shield heirs for which the notes herein sued upon were given. The question at issue is whether the debt evidenced by the notes given by the Shield heirs when the original loan was made has been satisfied and discharged. That debt may have been paid and discharged without satisfaction of another debt owed to the Coleman bank by Leon L. Shield individually. We think, however, that the fact that Leon L. Shield had been indebted to the Coleman bank and that it took a loss on that debt in its settlement with the independent executrix of his estate, and even the amount of that loss, are circumstances, with others in the record to be considered by the jury in solving the issue of fact which the Court of Civil Appeals held was raised by the evidence.

The several documents in the record evidence on their face the acquisition by the Coleman bank of the 2,571 acres of land and its sale and conveyance by the bank to Elgean Shield

and Wallace for a consideration of $32,000.00. But other evidence in the record, including the testimony of Elgean Shield and S. H. Gray, vice-president of the Coleman bank, tends to prove that the documents were executed in the accomplishment of a plan of refinancing the loan, for the primary purpose of paying to the Coleman bank the full amount of the balance owed by the Shield heirs on the notes that they executed to the Ketchum Mortgage Company in 1929 and thus discharging the obligation evidenced by those notes.

The Coleman bank first became interested in the land when, in the year 1933, it loaned Leon L. Shield about $35,000.00 and he, to secure the loan, executed a deed of trust, which of course was subordinate to the deed of trust liens that he and the other Shield heirs had created as security for the notes to the mortgage company. The bank became the owner of Leon L. Shield's 6/25 interest in the land through deed executed in September, 1937, by the independent executrix of his estate.

S. H. Gray testified in substance as follows: In October, 1937, the Kansas City Life Insurance Company was insisting upon the payment of taxes and accrued interest on the original loan and an agreement was made that the Coleman bank should make the payment and it did make it in approximately the sum of $4,100.00. He was "pretty sure" that I. O. Shield was present. It was agreed that the bank would carry the obligation until March 1, 1938, and that then arrangements would be made "to get the loan refinanced in some other loan." In the first few days of March, 1938, when the Kansas City Life Insurance Company was insisting upon payment of the entire loan, another conference was held at the bank, at which a representative of the life insurance company and I. O. Shield, Elgean Shield and Wallace were present and it was agreed that the bank would take up the loan and have it transferred. The assignment of the balance of the notes and of the lien securing them from the life insurance company to the bank was dated February 24, 1938.

Gray further testified that Elgean Shield and Wallace came to the bank during the month of February or March, 1938; that representatives of the bank were during all of the time insisting that the bank wanted its money, first for the $4,100.00 and later for the entire amount; and that Elgean Shield made a considerable effort to borrow the money. He testified that after

the bank foreclosed the lien and bought the land at the foreclosure sale he had, during the next three or four months, negotiations with Elgean Shield with reference to selling the land to him and Karl Wallace, and that his agreement with Elgean Shield was that the bank would sell him the land "for a consideration that would cover the amount of money that we had paid out and also for our equity that we had acquired from the estate of Mr. Leon L. Shield" and that payment was made to the bank from the proceeds of a loan that Elgean Shield procured from Mrs. Winterbotham and Brown Brothers.

The substance of a part of Elgean Shield's testimony is as follows: After Leon L. Shield died he, Elgean Shield, took charge of the land owned by the Shield heirs. Before the Coleman bank foreclosed the lien he did business with it. He made an agreement with the bank that he would within six months purchase the notes owned by the Kansas City Life Insurance Company, provided he could get the money. It was his intention to save the land for all of the Shield heirs. While he testified positively that he had no conversation with any representative of the bank before the bank purchased the loan, he later testified that "they" (meaning representatives of the bank) "implied that" to him "ever since they foreclosed on Leon's part." He testified that he had been trying to refinance the loan ever since I. O. and Leon Shield let it become delinquent. He further testified that during the time the land was being posted for sale by the trustee S. H. Gray told him the bank would let him have the land if he got the money and provided he paid it Leon's part. He testified that he had an agreement with Mr. Gray and "went ahead and paid all of it, everything we owed them." He explained that he procured $32,000.00 from Mrs. Winterbotham and Brown Brothers and paid the Coleman bank the entire amount owing on the Kansas City Life Insurance Company loan.

According to Elgean Shield's testimony the land was worth $730.00 an acre, making a total value of $77,130.00.

It was stipulated by the parties that the Coleman bank had released all of the makers of the notes herein sued upon, except respondent, from any further liability thereon.

We believe that the foregoing statement of evidence in the record demonstrates the correctness of the decision of the

Court of Civil Appeals that an issue of fact was raised with respect to the full satisfaction of the debt upon which this suit was brought. The evidence reasonably supports the conclusion that the conveyance made by the Coleman bank to Elgean Shield and Wallace was in consummation of the undertaking and efforts of Elgean Shield begun in 1937 to save the land by refinancing the loan and paying the Coleman bank the full amount of the balance owed by the Shield heirs on the original debt and that the Coleman bank intended to. accept and did accept the payment made to it by Elgean Shield in satisfaction of that debt.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court, December 9, 1942.