**AETNA CASUALTY & SURETY COMPANY, Appellant,**

v.

**Denton R. BRUNKEN, Appellee.**

No. 3831.

Court of Civil Appeals of Texas.

Eastland.

Dec. 6, 1963.

Rehearing Denied Jan. 10, 1964.

Crenshaw, Dupree & Milam, Brad Crawford, Jr., Lubbock, for appellant.

John K. Ford, Odessa, Woodrow Edwards, Gilmer, for appellee.

GRISSOM, Chief Justice.

Appealed from the District Court of Borden County.

This is a workmen's compensation case. Denton R. Brunken, the employee, obtained a judgment in the District Court of Borden County based on a jury verdict that he was permanently partially incapacitated by an injury he received while employed by Noble Drilling Corporation in Borden County. Aetna Casualty & Surety Company, said employer's insurer, has appealed.

Appellant's first point is that the court erred in overruling its plea in abatement that there was a prior suit pending between the same parties over the same cause of action in the United States District Court at Lubbock. It was shown that on April 17th, 1962, appellant filled its notice of intention not to abide by the award of the Industrial Accident Board and its notice of appeal with the Board and on the same day filed its original complaint, "appealing" from the action of the Board, in said United States District Court. On April 19th, Brunken likewise appealed and filed suit in the District Court of Borden County; on April 24th, service was had on Brunken in the federal court case; on April 26th, Brunken filed an answer and cross action in the federal court; on May 11th, the insurance company filed its plea in abatement in the state court. Said suits were between the same parties over the same cause of action. The court did not err in overruling the plea in abatement. The general rule, which is adhered to in Texas, is that pendency of a prior suit between the same parties over the same cause of action in a federal court is not ground for abatement of a subsequent suit in a court of the state in which the federal court sits. 56 A.L.R.2d 338; 2 Texas Digest, Abatement & Revival, ☞12; 1 Texas Jur. 2d 61; Trinity Universal Ins. Co. v. De Martini, Tex.Civ.App., 118 S.W.2d 901 (Writ Ref.); International & G. N. R. Co. v. Barton, 24 Tex.Civ.App. 122, 57 S.W. 292, (Writ Ref.); Northwest Engineering Co. v. Chadwick Machinery Co., Tex.Civ. App., 93 S.W.2d 1223, (Writ Dis.); Boger v. Moore, Tex.Civ.App., 196 S.W.2d 646, 648; Mack v. Reserve Life Ins. Co., Tex.

Civ.App., 217 S.W.2d 39. See also Hyde Corporation v. Huffines, 158 Tex. 566, 578, 314 S.W.2d 763.

Appellant's points 2, 3, 4, 5, 6, 7 and 8, which it refers to as Group 1, is restated in summary in its brief as follows:

"This case should be reversed for the failure of the trial court to sustain objections of appellant's counsel to improper argument by Appellee's attorney, and for the improper jury argument by Appellee's counsel in going outside of the record and appealing to passion and prejudice and because of the aggregate effect of such improper argument upon the jury."

Appellant says objections were made to arguments until the court twice instructed its counsel that the court did not rule on objections to arguments and ordered counsel to be seated. It contends that the court's said action prevented appellant from objecting to other inflammatory and prejudicial argument. Bills of exception 1 to 5, inclusive, are as follows:

### (1)

"BE IT REMEMBERED that upon the trial of the above entitled and numbered cause, and on final argument by counsel for plaintiff, plaintiff's counsel, Honorable Robert Zeisenheim, made the following argument:

'We found out how easy it is for the insurance company to produce witnesses. All they've got to do is to call up the assistant superintendent or the drilling superintendent and tell him to send them over and they appear here. I think it is reasonable to assume that, and of course they are fully aware of what their legal rights are. There are ways to produce testimony, and when Denton took the stand and testified, he placed his credibility as a witness at issue in this case; and if he was lying, the law provides ways he can be impeached. If there was anything wrong with this boy, if there was any fact in his past, anything

about his life at all, indicating that he would lie to you under oath, the insurance company would have them up here and—'

'MR. CRAWFORD: We object to that as being improper. Mr. Zeisenheim knows there are a lot of things you can't bring out in a court of law.

THE COURT: Well, I will note your objection. I don't rule on argument ordinarily. I will note your exception. Just have a seat, Mr. Crawford.

MR. ZEISENHEIM: On the other hand, you are dealing with a boy in his twenties, who got through the Navy with an honorable discharge. Mr. Crawford is going to cry loud and long about the fact that Denton did not work steadily during the two years after he got out of service and before he got hurt out here on the job.'

That objections to such arguments and rulings by the Court are as shown by the above quoted record."

(2)

"BE IT REMEMBERED that upon the trial of the above entitled and numbered cause, and on final argument by counsel for plaintiff, plaintiff's counsel, Honorable Robert Zeisenheim, made the following argument:

'Let's be frank about it. When Aetna was collecting these premiums on this policy and the money was coming in and they weren't sued, they were stuffing the money down in their sock; and the only time when we ask them to pay, they holler and—'

'MR. CRAWFORD: That is highly improper and has no basis in this case.

THE COURT: All right, the jury heard it; they will remember the testimony.

MR. ZEISENHEIM: Aetna carried the policy of insurance and they were not giving it away, and what does the insurance company do when we bring suit and ask them to pay off like they are supposed to do? They've got something for everybody. Santa Claus is a joke compared to the Aetna

Insurance Company. They've got something to feed the jury with. If one of them is sued they said he didn't have an accident. Sometimes they will say he had an accident, but he didn't get hurt; he has already gone back to work—they have something for everybody. I think you can rely on the fact that Dr. Tull is telling the truth. Then they said if he did get hurt, why it wasn't this accident, but one he had six months before that. He didn't file any claim. Yes, they've got something for everybody and they are asking you to close the door on this boy, not just today, but for all time, for his future.'

That objections to such arguments and rulings by the Court are as shown by the above quoted record."

(3)

"BE IT REMEMBERED that upon the trial of the above entitled and numbered cause, and on final argument by counsel for plaintiff, plaintiff's counsel, Honorable Robert Zeisenheim, made the following argument:

'Now I gather from what Brad says he is accusing me of something, but I firmly believe that his witnesses didn't tell you anything that has anything to do with the facts of this lawsuit. In sum, as I recall, they testified they did not discuss the accident on the way home in the car. They were out there and they appeared here as witnesses of this insurance company. I am under no duty or obligation to ask them anything. Brad avoided asking them whether the accident happened; he merely asked them whether they discussed it on the way home in the car. That as far as he asked them, did they talk about it on the way home in the car, and of course both of them said no. I didn't ask—I wasn't obligated to ask his own witnesses whether an accident happened out there on that rig, but he could—'

'MR. CRAWFORD: We object to that. Mr. Zeisenheim can ask all the questions he wants to of the witnesses. He has an opportunity to cross examine.

THE COURT: He can comment on your not asking certain questions. You commented on his witnesses not—taking the stand. I don't like to take part in the argument, but let's let him argue his case. You argued yours. Let's be seated.

MR. BRAD CRAWFORD: We accept.'

That objections to such arguments and rulings by the Court are as shown by the above quoted record."

(4)

"BE IT REMEMBERED that upon the trial of the above entitled and numbered cause, and on final argument by counsel for plaintiff, plaintiff's counsel, Honorable Zeisenheim, made the following argument:

'I will do my best to give you most of my time back to your Honor and this jury. I have heard this same type of speech so many times that it doesn't scare me any more. Now Mr. Crawford told you about how he truly loves the jury system. I take it in that—he is trying to imply that Aetna loves the jury system. Ladies and gentlemen, let's be frank about this thing. Of course we brought this lawsuit. Aetna is here because they wouldn't pay this boy who is being criticized because he went out and hired a lawyer.'

That objections to such arguments and rulings by the Court are as shown by the above quoted record."

(5)

"BE IT REMEMBERED that upon the trial of the above entitled and numbered cause, and on the final argument by counsel for plaintiff, plaintiff's counsel, Honorable Robert Zeisenheim, made the following argument:

'One of the things that did impress me about Dr. O'Bannion is that he told you that if he were going to examine x-rays and his decision and the results of his examination might mean somebody's life he would certainly prefer to look at the x-rays in a view box, just like the careful Dr. Tull did, and just five minutes before that I picked up some x-rays he had never seen before, and without a view box, he didn't look at them two minutes and yet he could reach a decision which might mean a person's life—not his life maybe, but the kind of life he is entitled to have. And based on that skimpy examination he is in effect saying something that may take away from this boy benefits that this insurance company owes him under the law and for which they accepted premiums and issued the policy.'

That objections to such arguments and rulings by the Court are as shown by the above quoted record."

In bill number one it appears that the only thing objected to was the statement that if there was anything that indicated appellee had committed perjury the insurance company would have produced witnesses to prove it. Appellant's objection was merely that said argument was improper. In connection with that extremely general objection appellant's counsel stated that appellee's counsel knew there were a lot of things he could not bring out in court. The court stated in response to said objection that "ordinarily" he did not rule on objections to argument but that he would note his exception. He then asked counsel to be seated. As we understand it, appellant was claiming that if appellee had any disability it was caused by an injury suffered about six months prior to the injury asserted by appellee as the basis for this suit, for which previous injury appellee had not filed a claim for compensation, and, as shown in bill 3, it was, at least, indicated that appellant's witnesses, who were present when appellee claims he was last injured, were not asked by appellant whether an accident then happened, while appellant's testimony was to the effect that he suffered no disability from the previous injury but that he is disabled and his disability was caused by an injury at the rig on the occasion made the basis for this suit, at which time appellant's said witnesses were present. Under these

circumstances, there was justification for argument that if appellee had testified falsely with reference to the happening of an accident which he says caused his disability that appellant's witnesses would have so testified. There was no request that the court instruct the jury not to consider this or any other argument.

■ The only thing objected to as shown in bill number two was appellee's argument, "Let's be frank about it. When Aetna was collecting these premiums on this policy and the money was coming in and they weren't sued, they were stuffing the money down in their sock; and the only time when we ask them to pay, they holler and—" The objection made was that the argument was highly improper and had no basis in the evidence. As stated, there was some contention by appellant that if appellee had any disability it was caused by a previous accident for which appellee had not claimed compensation. We think there was a basis for the argument in the evidence and that it was not highly improper.

■ The substance of bill number three is that appellee's counsel argued that appellant's counsel had not asked its witnesses whether appellee had an accident at the rig and that he had no duty to ask them about it. Appellant's counsel simply stated that he objected to "that". He then stated that appellee's counsel could ask said witnesses all the questions he wanted to and that he had an opportunity to cross examine them. If, as the bill indicates, appellant's witnesses, who were present at the rig at the time appellant says he was injured, were not asked by appellant whether the accident happened, we think, as appellee argued, that his counsel had no "duty" to ask them whether it happened, especially since they had not disputed Brunken's testimony that he was injured at that time. We think the effect of the court's action was to overrule said general objection. It is the duty of the court to pass upon objections and not leave it to a jury to determine whether there is a basis in the evidence for the argument ob-

jected to. But, the argument objected to was not improper and there was a basis therefor in the evidence. Therefore, appellant could not have been hurt by the court's action.

Appellee's attorney did not tell the jury anything they did not already know when he said (as shown by bill 4) that appellee brought the suit and appellant was in court because it wouldn't pay him. The criticism of the testimony of appellant's doctor (shown in bill 5) was not unreasonable, nor improper.

■ When argument was objected to no legal ground therefor was stated and the objections were not clearly directed to any specific statement of opposing counsel. The court was not requested to instruct the jury not to consider any argument. The arguments complained of in bills 4 and 5 were not objected to, nor attempted to be objected to, in any manner. Generally the duty rests upon an appellant to object to all argument that is not "incurably" improper and failure to object constitutes a waiver of the error. Texas & N. O. R. Co. v. Sturgeon, 142 Tex. 222, 177 S.W.2d 264, 267. However, when the argument is so prejudicial or inflammatory that no instruction from the court will cure the error an objection and request for instruction is not required. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054, 1055. In Travelers Insurance Company v. Broadnax, Tex.Civ.App., 365 S.W.2d 683, 685, Judge Chadick, in an excellent opinion showing considerable research, states that, with the exception of argument that injects racial, religious, social, political, or like prejudice, harm may be removed by the court instructing the jury to disregard it. Appellant contends it was excused from the duty to further object and request the court to instruct the jury not to consider argument by the fact that when it had previously objected the court had twice stated that it "ordinarily" did not pass upon objections to argument, stated he would note the objection and ordered counsel to be seated. It has apparently been held that

failure to object and ask for an instruction is not required when the trial court has established a rule that he will in no case sustain an objection to argument or instruct a jury to disregard it. See Galveston, H. & S. A. Ry. Co. v. Washington, 42 Tex.Civ. App. 380, 92 S.W. 1054, 1059, (Dis. WOJ); Houston & T. C. R. Co. v. Rehm, 36 Tex. Civ.App. 553, 82 S.W. 526, 527, 41–B Tex. Jur. 351, Section 290. Existence of such a firm and inclusive rule is not here established. However, regardless of whether said last mentioned rule is correct, the arguments not objected to were not reasonably calculated to cause and did not probably cause rendition of an improper verdict. While it is the duty of the court to rule directly upon objections when they are made, the effect of the court's actions, where objections were made, was to overrule them. None of the arguments were "incurable" and the cumulative effect thereof considered in the light of the record as a whole, was not, in our judgment, reasonably calculated to cause and did not probably cause the jury to be prejudiced or to render an improper verdict. See Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115 and Texas Power & Light Company v. Hering, 148 Tex. 350, 224 S.W. 2d 191, 192. We have carefully considered all complaints about argument and conclude that reversible error is not shown.

■ Appellant's points 9 to 11, inclusive, designated as Group Two, is restated in summary by appellant as follows:

"This case should be reversed for the reason that there is insufficient evidence to support the findings of the jury of partial permanent incapacity, or for the reason that such findings are against the great weight and preponderance of the evidence."

Appellant's main contention is that there was no evidence, or insufficient evidence, from which a jury might reasonably conclude that appellee suffered the disability found by the jury as a result of the injury he asserts as the basis for this suit. We be-

lieve the testimony of appellee and his medical witness is sufficient to support said findings. Tersely stated, the effect of appellee's doctor's testimony was that appellee had greater disability than found by the jury and appellee's testimony was to the effect that he had no disability from the previous injury, but that he was disabled and his disability was caused by his last injury. After applying the established rules for considering said points we have concluded that they should be overruled.

All of appellant's points have been considered and they are overruled. Reversible error is not shown. The judgment is affirmed.