John D. WILLIAMSON, Appellant,

v.

Fred E. TUCKER, Appellee.

No. 20503.

Court of Civil Appeals of Texas, Dallas.

April 2, 1981.
Rehearing Denied April 29, 1981.

884

E. Eldridge Goins, Jr., John O. Langdon, Goins & Underkofler, Dallas, for appellant.

Robert B. Payne, Payne & Spradley, Dallas, for appellee.

Before ROBERTSON, STOREY and STEPHENS, JJ.

ROBERTSON, Justice.

Plaintiff Fred Tucker sued defendant John Williamson on a note. Defendant raised affirmative defenses and a counterclaim, as well as filing several dilatory pleas and motions. The trial court granted plaintiff's motion for summary judgment. Defendant appeals from the judgment and urges sixty-five (65) points of error. We overrule each of defendant's points of error and affirm. The points of error and related facts will be discussed in general groups.

## BACKGROUND

The facts surrounding this case are fully stated in *Williamson v. Tucker*, 632 F.2d 579 (5th Cir. 1980). From 1960 to 1969, Gordon G. Tucker, Fred E. Tucker, Jr. and Marvin M. Blakeney, Jr. each owned an undivided one-third interest in a 160-acre tract of land located between Dallas and Fort Worth (the Property). After the location of the Dallas-Fort Worth airport was announced, each of the Tuckers and Blakeney, in a separate transaction, sold his undivided interest in the Property. The first sale occurred in November, 1969, when Blakeney sold his undivided one-third interest to Kenneth M. Good and Associates, Trustee (Good and Associates).

The second sale occurred in May, 1970, when Fred Tucker sold his undivided one-third interest to a group composed of M. L. Godwin, L. R. Polan, Jr. and James F. Mason, all of whom are employees of M. L. Godwin Investments, Inc. (Godwin Investments). Although the contract of sale required the group to execute a promissory note in the principal sum of $1,000,000 to Fred Tucker, it permitted the group thereafter to form a joint venture, and if such was accomplished, to substitute a new note executed by all the joint venturers in lieu of, and in rearrangement of, the first note. In July, 1970, the Grapevine-Regional Airport No. 1 Joint Venture (Reg Air I) was executed by John D. Williamson and fifteen other investors for the purpose of purchasing the interest that Godwin, Polan and Mason had purchased from Fred Tucker. In December, 1970, this interest was conveyed to Reg Air I, and a promissory note in the principal amount of $1,000,000 was executed and delivered by Williamson and the other joint venturers to Fred Tucker in renewal and extension of the original note. Williamson purchased a 20% interest in the venture.

Subsequently, Gordon Tucker and Good & Associates sold their interests in the property in a similar manner. As of June, 1971, each of three separate joint venturers owned an undivided one-third interest in the Property. The ownership of each joint venture was different; each had acquired its interest at a different time; and each had paid a different consideration. The transactions were all arranged by Godwin Investments. Each of the purchases was financed by the execution and delivery of a fifteen year general liability promissory note.

In 1976 Williamson, Lilley, Wilson, and Blake filed suit in federal court seeking to rescind the joint venture agreements they had signed and cancel the notes they had

executed. Each of these four persons had invested in one or more of the joint venture agreements. The federal district court dismissed the action for want of jurisdiction and an appeal was taken from that order. Following the order of dismissal, this suit was filed by Fred Tucker against Williamson. Gordon Tucker and the trustees of Home Interiors & Gifts, Inc., which had succeeded to the interest of Good & Associates, also filed separate suits in state court against Williamson, Lilley, Wilson, and Blake.

In this suit, Fred Tucker is suing Williamson for a deficiency judgment on the note given for the purchase of Tucker's interest in the property. Williamson urges points of error concerning the trial court's action on his motion to stay or plea to abate, the state case because of the pendency of the federal case, his motion to join various parties mentioned above and to consolidate this case with the other state cases, his motion to supplement the summary judgment evidence, his affirmative defenses and counterclaim and attorney's fees.

## MOTION TO STAY AND PLEA IN ABATEMENT

Defendant argues four points of error related to motions to stay or abate this case. In 1976, John Williamson and others sued Fred Tucker and others in federal court. The pleadings in the federal case raised some of the same issues that are involved in the case before the state courts that was filed subsequent to the federal case, although the posture of the parties is reversed. The federal district court's dismissal for lack of jurisdiction was reversed by the Court of Appeals for the Fifth Circuit in *Williamson v. Tucker*, 632 F.2d 579 (5th Cir. 1980) and the case was reinstated. Defendant urges to this court that the pendency of the federal action involving both of the parties before us and the same issues is a ground for abating, or in the alternative, staying the state court proceedings. We do not agree.

■ The rule is well settled in Texas that the mere pendency of an action in federal court involving the same parties and the same issues is not a reason for abating a state court proceeding. *Byrnes v. University of Houston*, 507 S.W.2d 815 (Tex.Civ. App.—Houston [14th Dist.] 1974, writ ref'd n. r. e.); *Aetna Casualty & Surety Co. v. Brunken*, 373 S.W.2d 811 (Tex.Civ.App.—Eastland 1963, writ ref'd n. r. e.); *Trinity Universal Ins. Co. v. De Martini*, 118 S.W.2d 901 (Tex.Civ.App.—El Paso 1938, writ ref'd). Defendant relies on *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063 (1926), as establishing a contrary rule. Defendant's analysis of that case is, in our view, incorrect. Although there is language in that case which, when taken out of the context of the facts, supports defendant's position, that language is clearly dicta. *Cleveland* concerned a plea to abate one state court proceeding because of the pendency of a prior state court proceeding in another county. Both courts had been created by the same sovereign and thus, a proceeding in one of those courts was grounds for abating a subsequent proceeding involving the same parties and the same issues in a court in another county. That is not the case in this instance and the holding of the court in *Cleveland* does not control this case.

■ Likewise, the language of the supreme court in *Fitch v. Jones*, 441 S.W.2d 187 (Tex.1969), does not control the case before us. In *Fitch*, the court stated: "There would have been cause for abatement of this state case so long as the bankruptcy matter was pending, assuming that the disposition in the federal proceeding would have affected Fitch's claim." *Id.* at 188. An analysis of the case relied upon by the court in support of that proposition, *Northeastern Real Estate Securities Corp. v. Goldstein*, 276 N.Y. 64, 11 N.E.2d 354 (1937), shows that the peculiar nature of the federal proceeding, bankruptcy, was the controlling fact. *See* 56 ALR2d 335 at 338. We conclude that, under the authorities,

defendant has not demonstrated that he is entitled to have the state case abated. Thus, we hold that the trial court did not err in failing to abate the state case merely because there was a prior pending federal action involving the same parties and the similar issues.

▮ In the alternative to his contention with respect to the plea in abatement, defendant urges that the trial court should have stayed the state court proceedings because of the action pending in federal court. While abatement, in a proper case, is a matter of right, a motion to stay is directed to the discretion of the court and the granting or denying of such a motion will only be reviewed for an abuse of discretion. *Evans v. Evans*, 186 S.W.2d 277 (Tex.Civ.App.— San Antonio 1945, no writ). We conclude that no abuse of discretion is present in this case because, first, the federal action involves numerous parties that are not parties to this state court action and, additionally, the federal case was instituted by our defendant several years before this suit was filed by plaintiff. Both parties assert that the jurisdictional question in the federal courts is still pending on motion for rehearing before the Court of Appeals for the Fifth Circuit and there are suggestions that once that decision becomes final, review by writ of certiorari to the United States Supreme Court will be sought.

In support of his argument that the trial court should have stayed the state court proceedings, defendant relies on *Alpine Gulf, Inc. v. Valentino*, 563 S.W.2d 358 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n. r. e.). In that case the court found an abuse of discretion in the failure to stay the proceedings because the same party filed suit in federal district court and five days later filed suit in the state courts of Texas seeking the same ultimate relief against the same parties. As indicated above, the nature of this suit, the posture of the suit in the federal courts, and the posture of the parties in the state court distinguishes this case from the case before the

court in *Alpine Gulf, Inc.* We hold that there was no abuse of discretion in the refusal to stay the proceedings.

## MOTION FOR JOINDER AND CONSOLIDATION

Defendant next complains of the trial court's refusal to join various other parties in the present suit and its refusal to consolidate this action with two later-filed state court actions. After plaintiff filed this suit, his brother Gordon Tucker and the trustees of Home Interiors and Gifts, Inc. filed separate suits in state courts seeking recovery on other promissory notes against Williamson, Lilley, Wilson, and Blake. Our plaintiff asserts no claim against Lilley, Wilson and Blake. Each of the notes sued upon in the later filed suits, as well as the note sued upon in this case, was secured by a separate undivided interest in the property that Fred Tucker, Gordon Tucker, and Good and Associates owned before the transactions giving rise to this series of suits in state and federal court. In 1974, the Home Interiors and Gifts, Inc. trustees purchased the notes payable to Good and Associates. The notes sued upon in each case were given in different transactions and the security for the notes was distinct in each case. The same real property is involved in all cases, but the security for the notes, undivided interests in that property, is a different undivided interest in each case. Defendant claims that Godwin Investments and its agents, Godwin, Polan, and Mason, acted as agents for plaintiff, Gordon Tucker, and Good and Associates for purposes of selling the property.

▮ Defendant asserts that joinder was proper under rules 37, 38, 40, and 97(f) and that the trial court should have granted leave to join the additional parties. We do not agree. It is well settled that the rules of civil procedure grant the trial court broad discretion in the matter of joinder. *Ruthart v. First State Bank, Tulia, Texas*, 431 S.W.2d 366 (Tex.Civ.App.—Amarillo 1968, writ ref'd). The trial court's action in

such procedural matters will not be disturbed on appeal except for abuse of discretion. *Hamilton v. Hamilton*, 154 Tex. 511, 280 S.W.2d 588 (1955). Defendant's statement of pertinent facts in his brief and arguments under these points is an extended discussion which attempts to demonstrate that the parties he seeks to join are inextricably involved in the facts which form the basis of the present suit. While the facts recited by defendant may suggest that joinder would have been proper, they do not show an abuse of discretion in the failure to join.

Although it is not entirely clear from defendant's brief which parties he has in mind, he argues that additional parties should have been joined under rule 39. Defendant does not contend that, in the absence of any of the parties defendant sought to join, complete relief cannot be accorded among those already parties. Instead, defendant argues that he may incur inconsistent obligations. Defendant does not point out which of the parties he seeks to join claims an interest relating to the subject matter of *this* action, nor does he demonstrate, or claim, that the alleged inconsistent obligations he may incur result by reason of the interest claimed by any of the parties not joined.

In support of his rule 39 argument defendant relies on *Page Airways, Inc. v. Associated Radio Service Co.*, 545 S.W.2d 184 (Tex.Civ.App.—San Antonio 1976, writ ref'd n. r. e.). The facts of that case demonstrate that it is not controlling in the case before us. In *Page Airways* the court held that the trial court erred in striking Page's intervention in a suit by API against Radio on a note because Page was a party needed for just adjudication. The court stated:

It is clear from the record before us that the note involved in the herein suit is identical in terms and provisions with another note given by API to Page, both of which notes state on their face that the note is subject to a Loan Agreement between API, Radio, and Page. It is also clear that both notes were given as a part of a business venture involving Page, Radio and API. The Loan Agreement referred to in the notes is executed by Page, Radio and API and creates joint rights and obligations among all of the parties, including how such notes are repayable, how they are to be extended or matured, and other rights which must be exercised jointly. The Loan Agreement specifically provides that any payments made by API on such notes are to be paid to Radio and Page in certain proportions, culminating in providing that on and after maturity any payments made by API shall be received and applied equally by Radio and Page. *Id.* at 189–90.

In the present case there are no joint rights and obligations among the parties and those persons sought to be joined as parties. Each transaction here involved is separate and distinct from the other transactions.

Our supreme court has indicated that, even in view of the provision of subdivision (a) of rule 39 that certain persons "shall be joined," there is no arbitrary standard or precise formula for determining whether a particular person falls within the provisions of the rule. *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200 (Tex.1974). Each case under rule 39 necessarily must turn on an application of its facts. The facts of this case, as mentioned above, show no abuse of discretion in the refusal of the trial court to join additional parties. *Packer v. First Texas Savings Association of Dallas*, 567 S.W.2d 574 (Tex.Civ.App.—Eastland 1978, writ ref'd n. r. e.); *Seiffert v. Bowden*, 556 S.W.2d 406 (Tex.Civ.App.—Corpus Christi 1977, no writ).

■ Defendant further argues that under Dallas Civil Court rule 1.1(f) and rule 174(a) of the Texas Rules of Civil Procedure, the district court should have transferred this case and consolidated it with the other cases pending in the courts of Dallas County involving common questions of law or fact. Rule 1.1(f) of the Dallas Civil Courts provides in pertinent part:

(2) Whenever any pending case is so related to another case previously filed in or disposed of by another District Court of Dallas County that a transfer of the later case to such other court would *facilitate orderly and efficient disposition of the litigation*, the Judge of the court in which the earlier case is or was pending *may*, upon notice and hearing, transfer the later case to such court.

The following type of cases shall be subject to transfer under this rule:

. . . .

Any case involving one or more of the same parties as an earlier case and requiring a determination of any of the same questions of fact or of law as those involved in the earlier case. Dallas Civil Court Rules, Rule 1.1(f), adopted 1977, effective February 1, 1978. [Emphasis added.]

It is clear from reading this rule that whether a case is transferred is discretionary with the judge. The word *shall* in the second paragraph indicates that certain types of cases are subject to transfer. It cannot be argued that a case such as those listed under the rule does not come within the confines of the rule. This language does not, however, mean that any case which is within the type of cases listed under the rule must be transferred, as the discretionary word *may* in the first paragraph quoted above indicates.

 Likewise, rule 174(a) confers upon the trial court broad discretion in the matter of consolidation. *Hamilton v. Hamilton, supra.* As we have said, a trial court's action in such procedural matters will not be disturbed on appeal except for abuse of discretion. *Id.* Given the voluminous nature of this case, we find no abuse of discretion on the part of the trial court in failing to transfer and consolidate this case with the other cases. This is especially true in light of the language of rule 1.1(f) of the Dallas Civil Courts that transfer may be had where it facilitates "orderly and efficient disposition of the litigation" and the language of rule 174(a) that the court "may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." While defendant argues that transfer and consolidation would be more efficient and less costly than separate suits, we cannot say that the trial court abused its discretion in finding against that argument in this particular set of cases.

## MOTION TO SUPPLEMENT SUMMARY JUDGMENT EVIDENCE

Plaintiff's motion for summary judgment was filed on September 27, 1979, and his first amended motion for summary judgment was filed on October 10, 1979. On October 6, the trial judge set the hearing on the motion for summary judgment for November 9, 1979, and the parties were notified of the hearing date. The hearing was held on November 9 and on November 26 the trial judge notified the parties that the motion would be granted. Defendant's motion to supplement the record was filed on November 27 and the trial court's order granting the motion for summary judgment was signed on November 28, 1979. On November 29, 1979, a hearing was held on the motion to supplement and the court denied the motion, finding that "no good and sufficient reason has been advanced or proven by Defendant to permit or require the granting of the relief requested." Defendant complains that the trial court's refusal to allow him to supplement the record was an abuse of discretion. We do not agree.

 Rule 166-A states in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, on file at the time of the hearing, *or filed thereafter and before judgment with permission of the court*, show that, except as to the amount of damages, there is no genuine issue as to any material fact . . . . [Emphasis added.]

From the express language of the rule, the trial court has the discretion to determine whether additional summary judgment evidence will be received after the hearing. To show an abuse of that discretion the party complaining of the trial court's ruling must show the materiality of the documents he sought to file. *Watson v. Godwin*, 425 S.W.2d 424 (Tex.Civ.App.—Amarillo 1968, writ ref'd n. r. e.). The failure to make such a showing is fatal to a point of error complaining of the court's refusal to allow the filing of the documents. *Id.*

The additional evidence which defendant sought to file is referred to in his brief as:

> (a) materials necessary to complete the record of materials referred to in the proceedings—exhibits of depositions on file at the time of the hearing, (b) deposition testimony, but which had not been filed, referred to in the hearing argument, (c) the deposition transcript of Fred Tucker which had been delivered to Tucker's counsel and not available to Williamson to file, and (d) the deposition transcript of Jason L. Polan—a transcript of which had not been available before the hearing.

Neither of the briefs filed by defendant makes any showing of the materiality of the documents, nor was such a showing made at oral argument. Although defendant argues that the record is incomplete without the documents, no attempt is made to show this court what issues of material fact are raised by them. The evidence with which defendant sought to supplement the record is before this court for the limited purpose of determining whether the trial court abused its discretion in denying defendant's motion to supplement, but in neither brief does defendant refer specifically, with appropriate document and page citation, to any evidence contained in the documents which raises a material fact issue.

Furthermore, defendant failed to file an affidavit, as authorized by rule 166–A(f), stating reasons why he was unable to present by affidavit the facts essential to justify his opposition. Had such an affidavit been filed, the court would have been authorized to refuse the application for summary judgment or to order a continuance to permit discovery. Since defendant failed to file such an affidavit and failed to show the materiality of the documents he sought to file, we hold that the trial court did not abuse its discretion in denying defendant's motion to supplement. *State ex rel. Grimes County Taxpayers Association v. Texas Municipal Power Agency*, 565 S.W.2d 258 (Tex.Civ.App.1978); *Watson v. Godwin, supra.*

We note that *City of Mesquite v. Scyene Investment Co.*, 295 S.W.2d 276 (Tex.Civ. App.—Dallas 1956, writ ref'd n. r. e.), relied upon by defendant, is not in point. In that case this court held that the trial court erred in failing to consider an amended affidavit. It is clear from reading that case, however, that the affidavit, which was in the nature of newly discovered evidence, raised a material fact issue and that issue was expressly presented to the court. In the present case there is no suggestion that any of the excluded evidence is in the nature of newly discovered evidence, nor are we directed to any material fact issue raised by that evidence.

### AFFIRMATIVE DEFENSES AND COUNTERCLAIM

In response to plaintiff's suit on the note, defendant raised affirmative defenses and a counterclaim seeking recission and damages based on alleged misrepresentations made by Godwin, Polan, and Mason in connection with defendant's purchase of the property here involved. Defendant argues that in making the misrepresentations Godwin, Polan, and Mason were acting as the agents for plaintiff. The agency relationship, defendant argues, arose by express authority from plaintiff to Godwin, Polan, and Mason.

On Defendant's affirmative defenses involving the misrepresentations of

Godwin, Polan, and Mason, he had the burden of raising a fact issue on each element of the defense. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979). On defendant's counterclaim, plaintiff had the burden of showing that there is no issue of fact as to at least one element of defendant's cause of action and that he was entitled to judgment as a matter of law. *"Moore" Burger, Inc. v. Phillips Petroleum Company*, 492 S.W.2d 934 (Tex. 1972). If no genuine issue of material fact has been shown as to the agency of Godwin, Polan, and Mason for Tucker, summary judgment was proper with respect to both the affirmative defenses concerning misrepresentations and the counterclaim which is based on the misrepresentations. We conclude that no genuine issue of material fact has been shown regarding agency.

The only evidence to which we are directed as establishing the agency relationship is two documents: first, a contract between Godwin, Polan, and Mason as one contracting party and Tucker as the other; and second, an amendment to that contract. The documents show that Godwin, Polan, and Mason were to purchase the property in question from Tucker and give him a note as payment. Godwin was to receive a commission from Tucker for negotiating that sale. The contract obligated Tucker to sell to Godwin, Polan and Mason and obligated Godwin, Polan, and Mason to purchase. Godwin, Polan, and Mason were to find other buyers to purchase the property from them and to take notes from those buyers payable to Tucker to replace the note they had given him. Tucker had no control over any aspect of the sale from Godwin, Polan, and Mason and their buyers, except to disapprove any buyer who purchased greater than a ten percent interest. If all of the persons who purchased from Godwin, Polan, and Mason purchased an interest not greater than ten percent, Tucker had no control. The contract expressly granted Godwin, Polan, and Mason the right to specific performance and there is no suggestion that

the contract is an option to purchase rather than an enforceable contract of sale. We cannot agree that these documents support defendant's claim of agency.

Although the facts upon which agency is claimed to be based must be determined by the finder of fact, the determination is to be made by the court as a matter of law. *Minneapolis-Moline Company v. Purser*, 361 S.W.2d 239 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.). Since the facts in this case are undisputed, we are faced solely with the question of whether the trial court properly applied the law to the facts. We conclude that it did. Considering the contract as a whole, we hold, as a matter of law, that it constitutes a sale of the land to Godwin, Polan, and Mason and not the creation of an agency to sell because if it were a contract of agency, it could not be specifically enforced by either party against the other. *Ansley Realty Co. v. Pope*, 105 Tex. 440, 151 S.W. 525 (1912); *Noblitt v. Barker*, 97 S.W.2d 1010 (Tex.Civ.App.—San Antonio 1936, writ ref'd); *Closner & Sprague v. Acker*, 200 S.W. 421 (Tex.Civ.App.—San Antonio 1917, writ ref'd). Our supreme court held in the *Ansley Realty* case, *supra*:

> The mutual right of specific performance by conveyance and payment was secured by the terms of the instrument; that is, each had the right upon performance of his or its agreement to compel performance by the other party.
>
> . . . .
>
> This, as a matter of law, constitutes a sale of the land and not the creation of an agency to sell; for, if it were a contract of agency, it could not be specifically enforced by either party against the other. Pomeroy, Specific Performance, § 48; *Chinnock v. Sainsbury*, 30 LJ. Ch. (N.S.) 409. If it had been an agency, a breach might have given a right of action for damages, but not for specific performance. *Id.* 151 S.W. at 527.

Defendant claims to have raised various other affirmative defenses in his response to plaintiff's motion for summary judgment

which he asserts are not based upon any agency relationship between plaintiff and Godwin, Polan, and Mason. On the other hand, plaintiff argues that the summary judgment evidence fails to raise a fact issue on each element of defendant's affirmative defenses. We have considered the evidence to which defendant specifically directs our attention by document and page reference as provided by rule 418 of the Texas Rules of Civil Procedure. Viewing this evidence, we hold that defendant has failed to raise a fact issue on each element of his affirmative defenses. As stated in *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979):

> With the exception of an attack on the legal sufficiency of the grounds expressly raised by the movant in his motion for summary judgment, the non-movant must expressly present to the trial court any reasons seeking to *avoid* movant's entitlement, such as those set out in rules 93 and 94, and he must present summary judgment proof when necessary to establish a fact issue. *Id.* at 678.

Defendant argues that the note in question was modified by agreement of the parties. The summary judgment evidence fails to show such an agreement and, in fact, tends to support the proposition that no agreement was reached to modify the terms of the note. The alleged modification concerned decreasing the principal of the note in exchange for cash payment. We are directed to no evidence showing that the parties ever agreed to how much the principal due would be reduced nor are we directed to any evidence that a cash payment was agreed to or made. In the absence of evidence showing the agreement of the parties, no genuine issue of material fact is raised regarding modification.

Relying upon a letter from Mason informing him that his interest in the joint venture agreement had been forfeited for failure to pay a tax assessment, defendant argues that there was a failure of consideration for his obligation to pay under the note. The letter defendant relies upon is not a part of the summary judgment evidence which was before the trial court at the time summary judgment was granted. Even if the letter had been before the trial court, there is no evidence showing Mason's authority to forfeit defendant's interest. Defendant further argues that a failure of consideration resulted because of the misrepresentations made to him regarding the property. As we have discussed, the evidence fails to raise a fact issue regarding the authority of Godwin, Polan, and Mason to make the representations in question.

 Next, defendant asserts, as an affirmative defense, the failure of plaintiff to mitigate his damages. The evidence is clear that upon defendant's default under the note, plaintiff foreclosed on defendant's interest in the property. The act of foreclosure is, to a certain extent, a mitigation of damages. What plaintiff is suing for here is the deficiency on the note after foreclosure. In the light of plaintiff's right to sue for the entire amount due on the note without foreclosing, *Maupin v. Chaney*, 139 Tex. 426, 163 S.W.2d 380 (1942), we cannot say that plaintiff totally failed to mitigate his damages. Furthermore, the summary judgment evidence fails to show that plaintiff could have mitigated all of his damages.

 After plaintiff foreclosed on defendant's interest in the property, it was sold by plaintiff to others who had been involved in the original joint venture agreement with Godwin, Polan, and Mason. Defendant argues that he is entitled to be credited with the amount paid to plaintiff at the subsequent sale of the property. We cannot agree. Under circumstances where a mortgagee has *wrongfully* taken possession of the property and sold it to a third party, he is required to allow, as a credit on his note in a suit for deficiency judgment, the reasonable market value of the mortgagor's equity in the property at the time he took possession of it. *Maupin v. Chaney*, 139 Tex. 426, 163 S.W.2d 380 (1942). In the

892

case before us, defendant has not met his burden of raising a fact issue with respect to this affirmative defense because there is no evidence, to which we are directed, showing that plaintiff wrongfully took possession of the property. The two cases upon which defendant relies in support of his position, *First Coleman National Bank v. Shield*, 140 Tex. 117, 166 S.W.2d 688 (1942) and *Habitat, Inc. v. McKanna*, 523 S.W.2d 787 (Tex.Civ.App.—Eastland 1974, no writ), are not in point. In the *Shield* case the evidence showed that there had been payment in full of the outstanding indebtedness. The summary judgment evidence fails to show any evidence of payment in full. In the *Habitat* case, the issue was priority of liens, and, of course, has no application to our fact situation.

Defendant argues that during the process of foreclosure, irregularities occurred which "chilled the bidding" at the foreclosure sale. We are not directed to any evidence which would have chilled the bidding, nor are we directed to any facts showing that the bidding was actually chilled or the extent of that chill. Since defendant's evidence fails to establish a fact issue on each element of his affirmative defenses, we hold summary judgment was proper with respect to those affirmative defenses.

■ The final affirmative defense raised by defendant is that Tex.Rev.Civ. Stat.Ann. art. 3810 which allows the owner to cause the property to be sold as provided in the deed of trust or contractual lien, is unconstitutional under the fourteenth amendment because it results in a taking of property without due process of law. We do not agree. No significant state action is involved in a foreclosure as provided for under article 3810, *Armenta v. Nussbaum*, 519 S.W.2d 673 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.), and thus we hold no constitutional violation is shown in this case.

## ATTORNEY'S FEES

■ Defendant's final twelve points of error complain of the trial court's award to plaintiff of $108,838.75 as the cost of reasonable attorney's fees. The basis for the award of attorney's fees is the promissory note sued upon which contains the following provision:

It is hereby specially agreed that if this Note is placed in the hands of an attorney for collection, or collected by suit, or through probate, or bankruptcy proceedings, the undersigned agrees to pay reasonable attorney's fees on the principal for the collection of the principal and interest then due hereon.

Defendant argues that a significant portion of the attorney's fees awarded was not incurred as a result of efforts to collect the note because included within the award are fees arising from the efforts of plaintiff to defend defendant's suit in federal court to rescind the note here involved. We do not agree. If plaintiff had made no defense in the federal courts, our defendant might well have been successful in his suit to rescind the note and thus, our plaintiff would have lost his right to collect the note in this state court suit. We hold that attorney's fees, in this case, arising out of efforts to defend the federal suit, were incurred as a result of efforts to collect the note.

■ Over objection by counsel for defendant that the evidence was hearsay, plaintiff testified that "on about the first part of June, I told Mr. Payne that I had not received all of my money on this note and that I turned it over to him to recover for me." The trial court properly overruled defendant's hearsay objection to this testimony. Plaintiff's statement was not admitted to show that plaintiff turned the note over to his attorney for collection, but rather it was offered to show that in connection with turning the note over, plaintiff had made a statement about the act of turning it over. The statement evidences plaintiff's mental state with regard to turning the note over to his attorney and, as such, is properly characterized as a verbal act or an operative fact. *See* 1A Ray, Law of Evidence § 795 (1980). A verbal act is not

hearsay, *Sanders v. Worthington*, 382 S.W.2d 910 (Tex.1964) and thus the evidence was properly admitted.

■ The note also contained the following provision for notice of default:

If, at any time during the term of this Note, any installment of interest or principal owing hereunder shall not be paid at the time set out in this Note, the holder hereof shall deliver written notice of such failure to M. L. Godwin Investments, Inc., and if such installment is not made to said holder on or before 15 days after delivery thereof then the holder hereof shall have the right to enforce specific performance of this Note and Deed of Trust securing same and/or declare the Note to be in default and pursue his remedies under law and under said Deed of Trust.

Defendant argues that, because of this provision, any legal action taken prior to delivery of written notice may not be recovered for under the attorney's fees provision of the note. We do not agree. The delivery of notice, under the unambiguous terms of the note, was a condition precedent to an action for specific performance or an action pursuing other legal remedies, but there is nothing in the notice provision which suggests that written notice was a condition precedent to placing the note in the hands of an attorney for collection. We hold that plaintiff's action in employing counsel to participate in the federal suit was a reasonable means of protecting his right to collect the note and thus, plaintiff's action was the placement of the note in the hands of an attorney for collection under the provision of the note allowing recovery of attorney's fees. *Miller v. Patterson*, 537 S.W.2d 360 (Tex.Civ.App.—Fort Worth 1976, no writ). Since the notice provision of the note was not a condition precedent to placing the note in the hands of an attorney for collection, the trial court properly held that plaintiff could recover for all attorney's fees incurred to collect the note.

■ Finally, defendant argues that the trial court erred in admitting a summary of the business records of plaintiff's attorneys to show the number of hours and amount of attorney's fees generated by the litigation surrounding the note. Defendant's objection to the document was that it was hearsay. The error, if any, in admitting the summary was harmless because the parties had stipulated that the number of hours were reasonable and the resulting charges represented reasonable attorney's fees for such work. Additionally, plaintiff's attorney testified to the number of hours involved in the case. Any error that the trial court committed in admitting the summary is not grounds for reversal. Tex.R.Civ.P. 434; *Sanger Bros. v. Craddock*, 2 S.W. 196 (Tex.1886); *Panhandle Nat. Bank v. Emery*, 78 Tex. 498, 15 S.W. 23 (1890); *Wallis v. Schneider*, 79 Tex. 479, 15 S.W. 492 (1891); *Hundere v. Tracy & Cook*, 494 S.W.2d 257 (Tex.Civ.App.—San Antonio 1973, writ ref'd n. r. e.).

Although we have not fully discussed each of defendant's sixty-five points of error, we have written on the major arguments he asserts. Each point of error, whether specifically discussed or not, has been carefully considered by this court and each point of error is overruled. The judgment of the trial court is affirmed.

Affirmed.