O'Brian - rehearing 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 



ON MOTION FOR REHEARING


 





NO. 3-91-478-CV






MICHAEL J. O'BRIAN, BARBARA A. O'BRIAN,


ROBERT J. O'BRIAN AND MARTHA J. O'BRIAN,



 
 APPELLANTS


vs.





FIRST STATE BANK AND H. FRANK HARREN III,



 APPELLEES




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT



NO. 491,412, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING



 






 The opinion and judgment of the Court in this cause handed down on January 20,
1993, are withdrawn and the following opinion is substituted therefor.

 Appellants, Michael J. O'Brian, Barbara A. O'Brian, Robert J. O'Brian, and
Martha J. O'Brian (collectively, "the O'Brians") appeal from summary judgment rendered in
favor of appellees, First State Bank ("the Bank") and H. Frank Harren III, as substitute trustee. 
We will reverse the judgment of the trial court and remand the cause for trial on the merits.



BACKGROUND


 The O'Brians sued the Bank and Harren alleging that the Bank wrongfully
foreclosed on property securing loans to Michael and Barbara by conducting non-judicial
foreclosure sales in violation of a temporary restraining order.

 The parties do not dispute the facts underlying this cause. Over a period of years,
Michael and Barbara executed four promissory notes and several renewals to Frontier National
Bank ("Frontier"). As collateral for two of these notes, they executed deeds of trust granting
Frontier a security interest in two separate parcels of real property--the "Harris Avenue Property"
and the "Preston Avenue Property." As additional security for the four notes, they pledged City
of Chicago Revenue Bonds to Frontier, and Michael's parents, Robert and Martha, pledged a
money-market account to Frontier.

 In October 1988, the Bank became owner and holder of the four notes and the
related security interests pursuant to a purchase and assumption transaction of Frontier through
the Federal Deposit Insurance Corporation. By this time, all the notes had matured by their terms
and remained unpaid. On January 17, 1989, the Bank gave notice of its intention to exercise its
power of sale under the deeds of trust and notice of the substitute trustee's sale to be conducted
on Tuesday, February 7, 1989.

 On the morning of February 7, 1989, the O'Brians filed suit against the Bank and
Harren to enjoin the non-judicial foreclosure sale. A hearing was held on the O'Brians'
application for a temporary restraining order; Harren appeared as substitute trustee and counsel
for the bank. At the hearing, the O'Brians represented that Michael was relocating and his
employer, IBM, would buy the Preston Avenue Property through its employee-relocation program
for $412,500. At the conclusion of the hearing, the court signed an order directing that "[a]
Temporary Restraining Order be issued without notice" restraining the Bank and its agents from
foreclosing on the real property and the money-market account and setting bond at $5,000. The
O'Brians contend Harren agreed to waive service of the restraining order at the hearing.

 The O'Brians filed the signed order and a surety bond with the district clerk; the
clerk initially approved the bond. Later on February 7th, Harren examined the bond and decided
that it was defective because it contained a photocopied signature of the surety. Harren informed
the district clerk of the claimed defect, and an employee of the district clerk's office crossed
through the file stamp on the bond and obliterated the district clerk's signature with correcting
fluid. As a result, the district clerk did not issue a formal writ of injunction. The O'Brians filed
a bond with an original signature on February 8, 1989.

 Harren also decided that the order was deficient as a temporary restraining order
because (1) it failed to set forth the reasons for its issuance; (2) it failed to set forth in reasonable
detail the act or acts to be restrained; (3) it did not adequately describe the real property involved;
(4) it failed to set a hearing for a temporary injunction; (5) it failed to allege wrongful conduct or
an intent to engage in wrongful conduct; and (6) it did not set out reasons why an injury would
occur if the restraint was not granted. See Tex. R. Civ. P. 683, 684.

 After Harren discovered the claimed defects in the bond and the order, he
unsuccessfully attempted to contact the O'Brians' counsel in San Antonio and the judge who had
signed the order. Harren was able to contact local counsel for the O'Brians and stated that he
intended to go ahead with the foreclosure sale. Harren then conducted the sale at approximately
3:50 p.m. on February 7th. The Bank purchased the Harris Avenue Property for $200,000 and
the Preston Avenue Property for $245,000. Subsequently, the Bank foreclosed on the money-market account and the City of Chicago Revenue Bonds. After the Bank applied all the
foreclosure proceeds to the notes, a deficiency remained unpaid.

 On February 17, 1989, the O'Brians filed a motion to have the foreclosure sale set
aside and a motion to hold Harren and the Bank in contempt of court. On March 3, 1989, the
district court rendered an order denying the O'Brians' motion to set aside the sale and declared
its prior order "void ab initio" and dismissed the cause "with prejudice."

 The O'Brians appealed that decision to this Court. At that time, we determined that
the appeal had been mooted because the temporary restraining order had expired and the sale it
had restrained had been completed. See O'Brian v. First State Bank, No. 3-89-128-CV (Tex.
App.--Austin June 27, 1990, no writ) (not designated for publication).

 Two other related suits preceded the cause now on appeal. First, Barbara filed for
personal bankruptcy protection under Chapter 7 of the Bankruptcy Code. See In re Barbara
Aileen O'Brian, Case No. 89-10465LC (Bankr. W.D. Tex.). In connection with that case, the
Bank filed an adversary proceeding seeking a declaratory judgment that the foreclosure sales did
not constitute fraudulent transfers under section 548 of the Bankruptcy Code and that the Bank
had paid a "reasonably equivalent value" for the property. See First State Bank v. Barbara Aileen
O'Brian, Adv. Pro. No. 89-1259FM (Bankr. W.D. Tex.). Barbara contested the relief sought
by the Bank in the adversary proceeding only as to the Preston Avenue Property. The bankruptcy
court rendered judgment in favor of the Bank, finding payment of "reasonable equivalent value"
and no fraudulent transfer. Second, after the foreclosure sale, the Bank successfully prosecuted
a forcible entry and detainer suit in county court to evict Barbara from the Preston Avenue
Property.

 After the dismissal of the first cause on appeal, the O'Brians initiated this cause for
wrongful foreclosure seeking various alternative remedies. The Bank counterclaimed seeking (1)
a judgment for the principal remaining due on the notes and pre-judgment and post-judgment
interest; (2) a declaratory judgment that the bonds had been judicially foreclosed; (3) a declaratory
judgment that the money-market account had been properly applied against the debt; (4) damages
for the rental value of the Preston Avenue Property during the O'Brians' post-foreclosure
wrongful possession of the property; and (5) an award of attorney's fees.

 The Bank and Harren jointly moved for summary judgment on all claims, and the
O'Brians filed a response. The district court rendered summary judgment that (1) granted the
Bank judgment against Michael for $168,541.10 in unpaid principal and $40,403.78 in pre-judgment interest, plus post-judgment interest and attorney's fees; (2) declared that the bonds had
been judicially foreclosed and the money-market account had been properly and lawfully applied
against the debt; and (3) ordered that the O'Brians take nothing on their claims. The district court
denied the Bank's motion for summary judgment as to rents on the Preston Avenue Property and
severed that portion of the action for further proceedings. By eight points of error, the O'Brians
appeal from the summary judgment.




DISCUSSION AND HOLDING


Standard of Review


 The standards for reviewing a summary judgment are well established:



(1) The movant for summary judgment has the burden of showing that no genuine
issue of material fact exists and that it is entitled to judgment as a matter of
law.


(2) In deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the non-movant will be taken as true.


(3) Every reasonable inference must be indulged in favor of the non-movant and
any doubts resolved in its favor.



Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

 Where the order does not state a specific reason for granting the judgment, the non-movant, on appeal, must show why each ground asserted in the motion is insufficient to support
the order. Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 79 (Tex. 1989); McCrea v. Cubilla
Condominium Corp., 685 S.W.2d 755, 757 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd
n.r.e.). In this cause, the summary-judgment order did not state the reasons supporting the order. 
Therefore, we must examine each ground the Bank and Harren asserted.

 In their joint motion for summary judgment, the Bank and Harren made the
following arguments: (1) the temporary restraining order was void ab initio; (2) the order did not,
in itself, constitute a temporary restraining order; (3) the O'Brians' claims were barred under res
judicata because the claims should have been urged in the prior cause seeking injunctive relief;
and (4) the evidence showed no issue of material fact as to the amounts Michael owed the Bank
on the notes. The first three arguments go to the O'Brians' wrongful foreclosure claims, while
the last goes to the Bank's counterclaims.



Wrongful Foreclosure


 To establish entitlement to summary judgment on the O'Brians' wrongful
foreclosure claims, the Bank and Harren had the burden of conclusively negating at least one
essential element of the claim or establishing an affirmative defense as a matter of law. Citizens
First Nat'l Bank of Tyler v. Cinco Exploration Co., 540 S.W.2d 292, 294 (Tex. 1976); Swilley
v. Hughes, 488 S.W.2d 64, 67 (Tex. 1972). 

 In their first point of error, the O'Brians argue that the trial court erred in rendering
summary judgment on their wrongful foreclosure claims because the foreclosure was void as a
matter of law. Under this point, the O'Brians attack the Bank and Harren's summary-judgment
arguments that the order was void ab initio and was not, in itself, a temporary restraining order.

 On summary judgment, the Bank and Harren argued that the claimed deficiencies
in the bond and in the order under Rules 683 and 684 resulted in the attempted temporary
restraining order being void ab initio. See Tex. R. Civ. P. 683, 684. Violation of such a void
order, they argued, could not form the basis of a wrongful-foreclosure action as a matter of law. 
In the previous appeal, this Court observed in dicta that the order was not void ab initio, but only
voidable. See O'Brian v. First State Bank, No. 3-89-128-CV (Tex. App.--Austin June 27, 1990,
no writ) (not designated for publication). Since we dismissed the cause as moot, the observation
was simply that, and not a controlling holding. Nonetheless, we believe our earlier reasoning
remains valid. 

 The Bank and Harren argue that the order failed to comply with Rule 683 by failing
to (1) state the reasons for its issuance, (2) allege wrongful conduct or an intent to engage in
wrongful conduct by the Bank or Harren, (3) state reasons why an injury would occur if
injunction did not issue, (4) state in reasonable detail the acts to be restrained, (5) describe the real
estate in question, and (6) set a date for hearing on a temporary injunction.

 The failure to comply with rule 683 may be waived absent some meaningful action
to compel the trial court to follow the rule. Fleming Cos., Inc. v. Due, 715 S.W.2d 855, 857
(Tex. App.--Beaumont 1986, no writ); but see Courtland Place Historical Found. v. Doerner, 768
S.W.2d 924, 926 (Tex. App.--Houston [1st Dist.] 1989, no writ); Sigma Sys. Corp. v. Electronic
Data Sys. Corp., 467 S.W.2d 675, 677 (Tex. Civ. App.--Tyler 1971, no writ); Rothermel v.
Goodrich, 292 S.W.2d 882, 884-85 (Tex. Civ. App.--Beaumont 1956, no writ). We conclude that
Harren did not take any meaningful action to give the trial court an opportunity to cure the
deficiencies in the order. Therefore, these complaints are waived. If we were to reach these
objections to the order, we would conclude they do not have merit.

 The first three alleged deficiencies complain of the failure of the order to state the
reasons for issuance of the restraining order. The order recites that the court "heard Plaintiff's
Original Petition and Application for Injunctive Relief, and after considering same, it appearing
. . . that same should be granted for the causes stated therein." (Emphasis added). By this
language the order incorporated by reference the reasons stated in the petition. Such incorporation
by reference does not violate Rule 683. City of Fort Worth v. McDonald, 293 S.W.2d 256, 260
(Tex. Civ. App.--Fort Worth 1956, writ ref'd n.r.e.). In the instant cause, the injunction was not
issued ex parte, rather the Bank and Harren had actual notice of the basis for the injunction and
participated in the hearing on the injunction. On these facts, we conclude that incorporation by
reference to the petition to be sufficient.

 The fourth and fifth alleged deficiencies in the order concern the specificity of the
acts restrained. While the order does not describe the subject property by legal description or by
street address, the Bank and Harren had actual notice of the property at issue and the ruling of the
court that the foreclosure sale be restrained. The O'Brians assert that the parties agreed that
service of the order would not be necessary because of the Bank and Harren's actual knowledge
of the order and its terms. The purpose of Rule 683 is to adequately inform a party of what he
is enjoined from doing and the supporting reasons. Board of Equalization v. Wells, 473 S.W.2d
88 (Tex. Civ. App.--Dallas 1971, no writ). On the immediate facts, that goal was otherwise
satisfied. We conclude that any violations of Rule 683 in the order caused the Bank and Harren
no harm and, therefore, are not grounds for considering the order void ab initio. Payton v. Hurst
Eye, Ear, Nose & Throat Hosp. & Clinic, 318 S.W.2d 726, 734 (Tex. Civ. App.--Texarkana
1958, writ ref'd n.r.e.); Robertson Transps. Inc. v. Transport Co. of Texas, 256 S.W.2d 154, 155
(Tex. Civ. App--Austin 1953, no writ); Gonzales v. Rodriguez, 250 S.W.2d 253, 255 (Tex. Civ.
App.--San Antonio 1952, no writ); O'Daniel v. Libal, 196 S.W.2d 209, 214 (Tex. Civ.
App.--Waco 1946, no writ); but see City of Houston v. Rose, 361 S.W.2d 477, 478 (Tex. Civ.
App.--Houston 1962, no writ); Rothermel v. Goodrich, 292 S.W.2d at 885.

 Finally, the Bank and Harren contend the order is defective for failing to set a
hearing on a temporary injunction. This argument lacks merit. The order explicitly provides that
"[a] show cause hearing be held on the 17th day of February, 1989, at 1:00 p.m. to show cause
why this Temporary Restraining Order should not be dissolved or a temporary injunction issued." 

 Under the provisions of Rule 684 the filing of a bond is a condition precedent to
the issuance of a temporary restraining order. Ex parte Lesher, 651 S.W.2d 734, 736 (Tex.
1983); Goodwin v. Goodwin, 456 S.W.2d 885 (Tex. 1970). 

 "It is the general rule that defects in injunction bonds are waived, unless they are
taken advantage of by motion to correct them, or to dissolve." Mansfield v. Ramsey, 196 S.W.
330, 332 (Tex. Civ. App.--Beaumont 1917, no writ); see also Fleming Cos., Inc. v. Due, 715
S.W.2d ar 857; Magee v. Palm, 233 S.W. 321, 322 (Tex. Civ. App.--San Antonio 1921, no writ). 
In this case, neither the Bank nor Harren moved for a correction of the bond or a dissolution of
the injunction. The temporary restraining order was rendered after a contested hearing, rather
than ex parte. Accordingly, the Bank and Harren had an opportunity to raise any defects. 
Additionally, notice of the written order was waived because the Bank and Harren had actual
notice of the court's intent to enjoin the sale. We conclude that the Bank and Harren cannot now
raise the alleged defects as a defense to their violation of the terms of the injunction.

 If we were to reach the question of the effect of the bond defect on the restraining
order, we would conclude that the O'Brians sufficiently complied with Rule 684. We distinguish
the immediate case from those cases in which the trial court wholly failed to require a bond in the
order and no bond was filed. See Ex parte Jordan, 787 S.W.2d 367 (Tex. 1990); Ex parte
Lesher, 651 S.W.2d 734 (Tex. 1983); Goodwin v. Goodwin, 456 S.W.2d 885 (Tex. 1970);
Lancaster v. Lancaster, 291 S.W.2d 303, 308 (Tex. 1956). In other decisions, the supreme court
has distinguished the failure to require a bond from a filed but "defective bond which, upon
motion, could have been amended and corrected to afford full protection." Oil Field Haulers
Ass'n v. Railroad Comm'n, 381 S.W.2d 183 (Tex. 1964); see also Ex parte Coffee, 328 S.W.2d
283, 291 (Tex. 1959). In the present case, the court fixed bond, and the O'Brians executed and
filed a defective bond on February 7th. They submitted a corrected bond the next morning,
February 8th. On these facts, we conclude that the O'Brians sufficiently complied with Rule 684. 
Therefore, the temporary restraining order was not void ab initio.

 The Bank and Harren also argued on summary judgment that the order was not in
itself a temporary restraining order but merely an order authorizing the clerk to issue a temporary
restraining order. However, Harren was present when the court granted a temporary restraining
order, and he was aware that the court had ordered that the foreclosure sale not take place on
February 7th. When the court orders an injunction to be issued, all persons must obey the
mandate of the court if they have such knowledge of the granting of the writ as will give them
notice of its character, even if the writ has not been issued. Ex Parte Young, 129 S.W. 599, 600
(Tex. 1910). Thus, the Bank and Harren were not free to disregard the restraining order even
though the clerk had not yet issued the writ. We sustain the O'Brians' first point of error.

 In their second and third points of error, the O'Brians argue that the trial court
erred in rendering summary judgment because res judicata or collateral estoppel barred their
wrongful foreclosure claims.

 The record reflects that the Bank and Harren did not urge collateral estoppel as a
ground for summary judgment. Additionally, in their motion for summary judgment, the Bank
and Harren urged res judicata only as it applied to the previous state-court action for injunctive
relief and not to Barbara's bankruptcy proceedings or the forcible entry and detainer action
brought by the Bank after the foreclosure. Although the Bank and Harren raised these issues as
affirmative defenses in their original answer, unless also presented in the motion for summary
judgment, these are not proper grounds to affirm the judgment. City of Houston v. Clear Creek
Basin Auth., 589 S.W.2d 671, 675-77 (Tex. 1979). Therefore, in examining the propriety of the
summary judgment, we will not consider res judicata as to Barbara's bankruptcy proceedings or
the forcible entry and detainer suit, or collateral estoppel, as these cannot be considered grounds
to support the summary judgment below. See City of Houston v. Clear Creek Basin Auth., 589
S.W.2d at 675-77; Texas Dep't of Corrections v. Sisters of St. Francis of St. Jude Hosp., 753
S.W.2d 523, 525 (Tex. App.--Houston [1st Dist.] 1988, no writ).

 The O'Brians sought only injunctive relief in the first state-court action. The trial
court initially granted emergency injunctive relief, but later determined the order was void ab
initio, denied any further relief, and dismissed the cause as moot. On appeal, this Court observed
that the March 3, 1989 order declaring the temporary restraining order void ab initio was
incorrect, but dismissed the appeal as moot and vacated that order. The O'Brians did not make
any further appeal from that judgment and this Court's order of dismissal became final. There
is nothing in the record to indicate that the O'Brians amended their pleadings in the first cause to
add the wrongful foreclosure claims. In their summary-judgment motion, the Bank and Harren
argued that the failure to bring the wrongful foreclosure claims in the first suit bars those claims.

 Res judicata bars litigation of all issues connected with a single cause of action
which, with the use of diligence, might have been litigated, as well as those which were actually
litigated in a prior cause, on the theory that all such issues are "merged" into the prior judgment. 
Bonniwell v. Beech Aircraft Corp., 663 S.W.2d 816, 818 (Tex. 1984). We previously discussed
res judicata in Stewart v. City of Austin, 744 S.W.2d 682 (Tex. App.--Austin 1988, writ ref'd):



The rule of res judicata in Texas bars litigation of all issues connected with a cause
of action or defense which, with the use of diligence, might have been tried in a
former action as well as those actually tried. Stated differently, a party cannot
relitigate matters which he might have interposed, but failed to do so, in an action
between the same parties or their privies in reference to the same subject matter.



Id. at 684-85 (citations omitted).

 The O'Brians argue that the order of the district court was interlocutory in nature
and, thus, could not operate as res judicata. However, the district court not only declared the
temporary restraining order void ab initio, but dismissed the cause in its entirety. While an order
denying a temporary restraining order is not a final judgment and cannot support a plea of res
judicata, Miers v. Brouse, 271 S.W.2d 419, 421 (Tex. 1954), a judgment of dismissal that goes
to the merits is final for res judicata purposes. Ferguson v. Ferguson, 156 S.W.2d 543, 545 (Tex.
Civ. App.--Eastland 1941, writ ref'd w.o.m.). However, we need not determine whether the prior
order was final to resolve the res judicata issue.

 The party asserting res judicata as a basis for summary judgment has the burden
to present sufficient evidence to establish that the doctrine should apply. Walker v. Sharpe, 807
S.W.2d 442, 447 (Tex. App.--Corpus Christi 1991, no writ). Generally, to obtain summary
judgment on the basis of res judicata, the movant will be required to produce verified or certified
copies of both the prior judgment and the prior pleadings establishing the applicability of the
doctrine. Gardner v. Martin, 345 S.W.2d 274, 276 (Tex. 1961); Anders v. Mallard and Mallard,
Inc., 817 S.W.2d 90, 94 (Tex. App.--Houston [1st Dist.] 1991, no writ); Walker, 807 S.W.2d at
447; Chandler v. Carnes Co., 604 S.W.2d 485, 487 (Tex. Civ. App.--El Paso 1980, writ ref'd
n.r.e). Without a record containing both the pleadings and the judgment, it is generally not
possible for the trial court to determine the issues which were actually litigated or which could
have been litigated in the prior proceeding. Anders, 817 S.W.2d at 94. 

 As summary-judgment proof, the Bank and Harren offered business records, an
authenticating Bank officer's affidavit, and Harren's affidavit. The business-record evidence
consisted of the notes, deeds of trust, pledge agreements, security agreements, loan account
ledgers, the foreclosure notices, and documents evidencing the purchase and assumption of
Frontier by the Bank. The authenticating affidavit also set out the foreclosure sale prices for the
Harris and Preston Avenue Properties. Harren's affidavit set out the factual and procedural
history of the case and testimony as to attorney's fees. Attached to Harren's affidavit were copies
of the February 7 and March 3, 1989 orders of the district court and copies of orders from
Barbara's bankruptcy proceedings. As support for their response to the summary-judgment
motion, the O'Brians offered summary-judgment evidence refuting the Bank and Harren's
arguments by affidavit of their attorney. A copy of the prior opinion and mandate of this Court
was attached to the O'Brians' response.

 The Bank and Harren failed to attach copies of the pleadings from the prior state-court action to their joint motion for summary judgment. It is therefore impossible for the trial
court to have determined, and for this Court to review, whether the wrongful foreclosure claims
could have been litigated in the prior state-court action. The summary-judgment proof does not
contain evidence to support application of res judicata to the prior state-court judgment. We are
bound to review the summary judgment by the proof properly before the trial court. Accordingly,
the trial court could not have been properly granted summary judgment on res judicata grounds. 
We sustain the O'Brians' second and third points of error.

 The Bank and Harren have urged this Court to take judicial notice of records in the
prior appeal in order to provide the proof necessary to affirm the summary judgment. We
decline. The record does not reveal any attempt to have judicial notice of these documents taken
by the trial court. The application of judicial notice in reviewing summary judgments is limited. 
The duty is on the movant to bring the necessary proof of res judicata to the trial court. Gardner,
345 S.W.2d at 276. In a summary-judgment case, the courts will not take judicial notice of
documents which have not been properly attached to the motion. McCurry v. Aetna Casualty &
Sur. Co., 742 S.W.2d 863, 867 (Tex. App.--Corpus Christi 1987, writ denied). In a case directly
on point, the Eastland court of appeals held that, in an appeal from a summary judgment, it could
not take judicial notice of records in another cause not properly presented as summary-judgment
proof. Gist v. Stamford Hosp. Dist., 541 S.W.2d 510, 511 (Tex. Civ. App.--Eastland 1976, writ
ref'd n.r.e.). We overrule the Bank and Harren's motions to take judicial notice.



The Bank's Counterclaims


 To obtain summary judgment on its counterclaims, the Bank had the burden to
establish at least one ground of recovery as a matter of law. Pentad Joint Venture v. First State
Bank, 797 S.W.2d 92, 95 (Tex. App.--Austin 1990, writ denied).

 In their fourth, fifth and sixth points of error, the O'Brians argue that summary
judgment was improper on the Bank's counterclaims because issues of material facts existed on
(1) the fair market value of the Preston Avenue Property; (2) the fair market value of the Harris
Avenue Property; and (3) the amount of unpaid principal and interest owed on the notes. The
question on appeal is not whether the summary-judgment proof raises a fact issue, but whether
the summary judgment proof establishes as a matter of law that there is no genuine issue of
material fact as to one or more of the essential elements of the plaintiff's cause of action. Gibbs
v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970).

 The O'Brians argue that if the Bank and Harren were not entitled to judgment as
a matter of law on the wrongful foreclosure claims, a trial on the merits including the amount of
damages was warranted. The measure of damages for wrongful foreclosure is the difference
between the fair market value of the property at the time of the foreclosure and the amount of the
outstanding debt on the property. Farrell v. Hunt, 714 S.W.2d 298, 299 (Tex. 1986). The Bank
and Harren failed to offer any summary-judgment proof as to the fair market value of either
property. As discussed above, the Bank and Harren did not properly assert or support as
summary-judgment grounds either res judicata or collateral estoppel as to any prior proceeding
which may have involved the litigation of fair market value. We conclude that the O'Brians have
demonstrated that an issue of material fact exists that precludes summary judgment on the Bank's
counterclaims. We sustain the O'Brians' fourth and fifth points of error.

 If the O'Brians show that the foreclosure sale was improper and that an insufficient
sale price resulted, they would be entitled to a credit against the debt in the amount of the fair
market value of the property at the time of the sale. See Maupin v. Chaney, 163 S.W.2d 380, 384
(Tex. 1942); Williamson v. Tucker, 615 S.W.2d 881, 891 (Tex. Civ. App.--Dallas 1981, writ ref'd
n.r.e.). Because the O'Brians have raised a fact issue as to the propriety of the foreclosure, a
material fact issue remains as to the amount of unpaid principal and interest. Accordingly, we
sustain the O'Brians' sixth point of error.

 In their seventh and eighth points of error, the O'Brians complain that the trial
court's summary-judgment declarations that the City of Chicago Revenue Bonds had been
judicially foreclosed and that the money-market account had been applied to the debt in a lawful
manner were precluded because a material fact issue exists as to the amount of the outstanding
debt. We agree. The Bank argues that it could apply the money-market account to the debt at
any time, even absent a default or first resort to the other collateral. While this right may exist
under the security agreement, the temporary restraining order also enjoined action against the
money-market account. The validity of the temporary restraining order remains at issue. The
propriety of the Bank in foreclosing the bonds depends on the determination of whether a
deficiency existed on the notes. We conclude that issues of material fact exist as to the propriety
of the Bank's actions against the bonds and the money-market account. We sustain the O'Brians'
seventh and eighth points of error. 



CONCLUSION


 Having sustained all of the O'Brians' points of error, we reverse the judgment of
the trial court and remand the cause for trial on the merits. 



 

 Jimmy Carroll, Chief Justice


[Before Chief Justice Carroll, Justices Jones and Kidd]


Reversed and Remanded


Filed: April 7, 1993


[Do Not Publish]