In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00168-CV


______________________________




FREDYE LONG ALFORD, Appellant



V.



LYNN THOMAS THORNBURG, JR., 


AND MICHAEL R. AUGUSTINE, Appellees




 


On Appeal from the 102nd Judicial District Court


Bowie County, Texas


Trial Court No. 99C1181-102




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Fredye Long Alford (1) (Alford) and Thomas Lynn Thornburg, Jr. (Thornburg) were divorced
on October 17, 1995. While negotiating the division of property, the parties agreed Thornburg owed
Alford $85,000.00. Alford agreed to collect that $85,000.00 through trust fund proceeds that were
to be distributed to Thornburg, provided the proceeds would bypass him and go directly to her. (2) 
Specifically, the divorce decree provided, in pertinent part:

 [t]he sum of Eighty Five Thousand and No/100 Dollars ($85,000.00) cash payable
by  Lynn  Thomas  Thornburg,  Jr.  upon  the  first  to  occur  of  the  following
events: a. receipt by Lynn Thomas Thornburg, Jr. of the balance of his inheritance
out of a trust fund administered by Mike Augustine, said sum to be secured by
a lien to be placed upon the proceeds of such inheritance OR b. upon the death of
Lynn Thomas Thornburg, Jr., prior to his receipt of such inheritance, by means of an
assignment in favor of Fredye Mac Long as the irrevocable beneficiary of $85,000.00
out  of  proceeds  from  a  life  insurance  policy  on  the  life  of  Lynn  Thomas
Thornburg, Jr. . . . .


(Emphasis added). Pursuant to their agreement, Thornburg executed a "designation of lien on
proceeds of inheritance due to Lynn Thomas Thornburg, Jr." (the Assignment), which directed 
Michael Augustine (Augustine), as trustee, to pay the $85,000.00 directly to Alford once the trust
was funded. The trust document, however, contained a spendthrift clause that made invalid any
effort by Thornburg to assign the trust proceeds. (3) 

 Augustine, as trustee, filed a petition in the Superior Court of the State of California, County
of Los Angeles, in case number MP 000 551, to determine the validity of the Assignment in light
of the spendthrift clause, and, by an order dated July 3, 2000, that court declared the Assignment
void and directed Augustine that, on funding of the trust, he was not to pay the funds directly to
Alford. 

 On February 27, 1997, Thornburg filed for Chapter 13 bankruptcy in the United States
Bankruptcy Court for the Eastern District of Texas. On filing for bankruptcy, a stay was
automatically imposed on all entities, preventing the "commencement or continuation, including the
issuance or employment of process, of a judicial, administrative, or other action or proceeding
against the debtor, [Thornburg], that was or could have been commenced before the commencement
of the case." 11 U.S.C.A. § 362 (1993). Pursuant to Section 362(d), however, the bankruptcy court
subsequently granted Alford limited relief from the automatic stay. 11 U.S.C.A. § 362(d).

 After getting relief from the stay in bankruptcy, Alford filed suit against Thornburg for the
enforcement of a portion of the divorce decree pertaining to a life insurance policy that was ordered
maintained by Thornburg. Alford obtained a final judgment in that proceeding against Thornburg,
and, without permission from the bankruptcy court, Alford filed an abstract of that judgment in
Bowie County, Texas. In addition, while Thornburg was still under the protection of the automatic
stay, Alford filed a notice of lis pendens, without the permission of the bankruptcy court, on May
9, 2000, against a piece of property owned by Thornburg in Bowie County. (4) On March 12, 2002,
the bankruptcy court entered an order and an accompanying opinion, declaring the abstract of
judgment and the lis pendens void because they violated the automatic stay. Alford has appealed
the bankruptcy court's decision, and that appeal is currently pending. 

 On August 27, 1999, Alford filed this cause of action. (5) In response, Thornburg filed a
"motion for leave to request release of judgment and removal of lis pendens from respondent's
homestead," and the court ordered Alford to release the abstract of judgment and the lis pendens.

 Alford contended she would have collected the $85,000.00 in a different manner had she
known the trust proceeds would have to actually be distributed to Thornburg before she received
payment. In her second amended petition, she alleged Thornburg was guilty of fraud, civil
conspiracy, and breach of contract, and that Augustine was guilty of fraud and civil conspiracy. In
the alternative, Alford contended she was entitled to a rescission and/or reformation or a bill of
review with regard to the divorce decree. The trial court granted summary judgment in favor of
Thornburg and Augustine, and Alford brings this appeal.

 Alford asserts the trial court erred (1) by issuing, without subject matter jurisdiction, an oral
order enforcing an appealed bankruptcy ruling; (2) by issuing that order without notice or an
evidentiary hearing, thus denying Alford due process of law; (3) by considering Thornburg's
evidence in support of his motion for summary judgment; (4) by granting Thornburg's motion for
summary judgment; (5) by striking Alford's affidavits filed in response to Augustine's motion for
summary judgment; and (6) by granting Augustine's motion for summary judgment.

1. Subject Matter Jurisdiction

 On appeal, Alford contends that, because the bankruptcy court's order, voiding the abstract
of judgment and lis pendens, was pending on appeal, the state court did not have subject matter
jurisdiction to order a release of the same. (6) We disagree.

 It is well settled that the mere pendency of an action in federal court involving the same
parties and issues is not a reason for abating the subsequent state court proceeding. Williamson v.
Tucker, 615 S.W.2d 881, 885-86 (Tex. Civ. App.-Dallas 1981, writ ref'd n.r.e.); Byrnes v. Univ. of
Houston, 507 S.W.2d 815, 816 (Tex. Civ. App.-Houston [14th Dist.] 1974, writ ref'd n.r.e.). As a
matter of comity, however, it is the custom for the court in which the later action is instituted to stay
proceedings therein until the prior action is determined or, at least, for a reasonable time, and the
custom has practically grown into a general rule which strongly urges the duty on the court in which
the subsequent action is instituted to do so. Williamson, 615 S.W.2d at 885-86. While the prudent
course of action would have been to request a stay of the proceeding and allow the federal court to
reach a final determination on the issue, which could have led to a res judicata defense, neither party
requested the state court to stay the proceeding. As a result, the state court was not precluded from
exercising subject matter jurisdiction over this dispute. We overrule Alford's first point of error.

2. Due Process

 In her next point of error, Alford contends that, if the court is found to have properly
exercised its jurisdiction, the trial court erred by rendering its order without notice or a hearing. In
the present case, at a hearing conducted August 12, 2002, the trial court addressed the issue
concerning the abstract judgment and lis pendens. Specifically, the following exchange took place
between the court and Alford's counsel:

 [Court]: Let me get back to see where we are on some other things here. 
Your other - the lis pendens notice. 


 [Thornburg]: Yes. And it's a motion for lien to request the release of
judgments from removal of the lien. We are sitting there waiting to close, Your
Honor, and we can't.


 [Court]: Hold your argument on that. I think I know basically - I've heard
enough on that point before. Let me see why Mr. Peek [Alford's counsel] does not
want to release you from that, or maybe he does. Mr. Peek?


 [Mr. Peek]: Judge, I think the bankruptcy court ruled on that. I mean, there's
a bankruptcy order saying those are void.


 [Court]: Well, that's what I read, but has anything been done about it?


 [Mr. Peek]: Not other than her bankruptcy attorney had some
correspondence. I mean, the bankruptcy court didn't order her to do anything. 


 [Court]: I know the bankruptcy court did not. I read the order, and I read the
order finding. But in order to clean up that record, we need for her to release that.


 [Mr. Peek]: Probably so, Judge. 


The parties continued to discuss this issue, and eventually Alford executed a release of both her
abstract judgment and lis pendens. 

 Under Rule 33.1 of the Texas Rules of Appellate Procedure, an appellant must have made
a timely objection, stating the specific grounds for the ruling sought, and receive a ruling from the
trial court on that objection in order to preserve error for appellate review. Tex. R. App. P. 33.1. 
Even constitutional errors, such as due process complaints, are waived if not raised first in the trial
court. Tex. R. App. P. 33.1; Birdo v. Ament, 814 S.W.2d 808, 811 (Tex. App.-Waco 1991, writ
denied). 

 During the course of the proceedings at the trial court level, Alford failed to assert an
objection that her constitutional right to due process had been violated. Because Alford did not raise
that complaint in the trial court, she has failed to preserve error for appellate review. See Tex. R.
App. P. 33.1. We overrule Alford's second point of error.

3. Summary Judgment Evidence

 In her next point of error, Alford contends the trial court erred by considering factual
statements, exhibits, and pleadings attached to Thornburg's motion for summary judgment. While
Alford objected to the consideration of Thornburg's attachments, there is no trial court ruling
affirmatively shown in the record. In Trusty v. Strayhorn, 87 S.W.3d 756, 760 (Tex.
App.-Texarkana 2002, no pet.), this Court held that 

 the party objecting to summary judgment proof still has the burden to obtain a ruling
on that party's objections, but that the burden is satisfied if (1) the record
affirmatively indicates that the trial court ruled on the objections to the summary
judgment proof in granting summary judgment, or (2) the grounds for summary
judgment and the objections to the summary judgment proof are of such a nature that
the granting of summary judgment necessarily implies a ruling on the objections. 

This Court reasoned that, when a traditional motion for summary judgment is filed and only one
piece of evidence is offered in support of summary judgment and the respondent objects to that
evidence, if the trial court grants summary judgment, it can be implied that it also overruled the
objection, otherwise there would have been no evidence in support. See Blum v. Julian, 977 S.W.2d
819, 823 (Tex. App.-Fort Worth 1998, no pet.). 

 Alford contends there is an affirmative showing in the record that the trial court ruled on her
objections because the order provided as follows: "the trial court considered the Motion and
evidence attached thereto and the Response of the Plaintiff and the argument of counsel." However,
this Court, in Trusty, expressly held that, merely because the trial court considered the objections,
that alone is not a sufficient indication on the record that those objections were ruled on. Trusty, 87
S.W.3d at 761. Further, according to this Court's reasoning, there cannot be an implied ruling
because Alford made numerous objections and Thornburg asserted more than one ground for
summary judgment. Without an affirmative indication on the record, this Court has no way of
determining which objections received adverse rulings. As a result, Alford has failed to preserve
error for appellate review. Tex. R. App. P. 33.1.

 Beyond the attachments to Thornburg's motion for summary judgment, Alford also contends
the trial court erred by allowing Thornburg to testify at the summary judgment hearing. Again, in
order to preserve error, an appellant must have made a timely objection stating the specific grounds
for the ruling sought and receive a ruling from the trial court on that objection. Id. Alford contends
the following exchange was sufficient to preserve error:

 [Alford's Counsel]: Your Honor, we would object. That's eliciting testimony. 
As the court knows, in a summary judgment hearing there is no live testimony.


 [Thornburg]: Will the court allow me to proffer Mr. Potter's affidavit stating
the same?


 [Court]: It hadn't been submitted to Mr. Peek before this time though, has it?


 [Thornburg]: No, ma'am.


 [Court]: No. I am looking for what Judge Sharp said in that bankruptcy. I
need my own filing system with all of these different orders. 


If anything, it appears the trial court sustained Alford's objection, but in any event, the trial court
clearly did not make an adverse ruling on Alford's objection. Accordingly, she has failed to preserve
error for appellate review. See Tex. R. App. P. 33.1. We overrule Alford's third point of error.

4. Thornburg's Motion for Summary Judgment

 In her second amended petition, Alford alleges Thornburg is guilty of fraud, civil conspiracy,
and breach of contract. Further, Alford contends that, in the alternative, she is entitled to a bill of
review, requesting the pertinent portion of the divorce decree to be cancelled, or rescission and/or
reformation of the divorce decree. In response, Thornburg contended he was entitled to summary
judgment because (1) all of Alford's claims were discharged in bankruptcy, (2) the case was not ripe
for consideration, and (3) her suit was barred by their 1996 agreed final settlement, release, and
order. The trial court granted Thornburg's motion, we believe, improperly.

 A summary judgment is reviewed de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699
(Tex. 1994). The question on appeal is not whether the summary judgment proof raises a fact issue,
but whether the summary judgment proof establishes as a matter of law that there is no genuine issue
of material fact as to one or more of the essential elements of the plaintiff's cause of action. Gibbs
v. Gen. Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970). When reviewing a summary judgment,
this Court must adhere to the following standards: (1) the movant has the burden of showing there
is no genuine issue of material fact and the movant is entitled to judgment as a matter of law; (2) in
deciding whether there is a disputed issue of material fact precluding summary judgment, evidence
favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be
indulged in favor of the nonmovant. Limestone Prods. Distrib., Inc. v. McNamara, 71 S.W.3d 308,
311 (Tex. 2002). When the motion for summary judgment asserts several grounds and the trial court
does not specify on which ground the motion was granted, an appellant must show that each
independent ground is insufficient to support summary judgment. FM Props. Operating Co. v. City
of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

 a. Discharge in Bankruptcy

 In Thornburg's 1997 bankruptcy, Alford was initially listed as an unsecured creditor for the
amount of $85,000.00. Pursuant to an agreement reached by the parties, however, the bankruptcy
court entered an order stating that the $85,000.00 was Alford's separate property and was not
included in the bankruptcy estate.

 Based on that order, Thornburg contended Alford was no longer entitled to the $85,000.00. 
It is clear that result was not the bankruptcy court's intention. The same rules of interpretation apply
in construing the meaning of a court order or judgment as in ascertaining the meaning of other
written instruments. Lone Star Cement Corp. v. Fair, 467 S.W.2d 402, 404-05 (Tex. 1971). The
determinative factor is the intention of the court. Id. If a judgment is unambiguous with no room
for interpretation, it is our duty to declare its effect in light of the literal language used. Ellis v.
Mortgage & Trust, Inc., 751 S.W.2d 721 (Tex. App.-Fort Worth 1988, no writ). The order merely
states that the $85,000.00 is Alford's separate property, not part of the bankruptcy estate; therefore,
that proceeding was not the proper place to determine when and where those funds should be
distributed. The bankruptcy court did not intend to preclude Alford from collecting the $85,000.00,
but simply to exclude her right as a claim in bankruptcy to be collected from the bankruptcy estate
or discharged. That intention is further evidenced in the bankruptcy court's memorandum opinion,
in which it stated the automatic stay did not prohibit Alford from proceeding with the present cause
of action. Accordingly, the trial court erred in its interpretation of the order, and summary judgment
was improper to the extent it was granted based on discharge in bankruptcy. 

 b. Ripeness

 In order for a cause of action to be ripe for determination, the facts must have sufficiently
developed to show that an injury has already occurred. Patterson v. Planned Parenthood, 971
S.W.2d 439, 442 (Tex. 1998). If the injury is contingent on the happening of future events and is
therefore uncertain, the cause of action is not ripe for determination, and to proceed on the merits
of such a cause of action would require the court to issue an advisory opinion, which is expressly
prohibited by the Texas Constitution. Tex. Const. art. II, § 1 (separation of powers), art. IV, §§ 1,
22 (attorney general is part of executive department and is empowered to issue advisory opinions
to governor and other officials), art. V, § 8 (district court jurisdiction); Tex. Ass'n of Bus. v. Tex. Air
Control Bd., 852 S.W.2d 440, 444 (Tex. 1993) (explaining "we have construed our separation of
powers article to prohibit courts from issuing advisory opinions because such is function of
executive rather than judicial department").

 Thornburg contends this cause of action is not ripe because no harm will occur until
Thornburg's stepmother dies and the trust is funded with her life insurance proceeds. Further,
Thornburg contends the harm is contingent on the happening of future events, because if Thornburg
predeceases his stepmother, Alford would be paid from his life insurance policy and the validity of
the Assignment would be moot. Alford, however, argues that her agreement to the terms of the
divorce decree was contingent on the validity of the Assignment, and if she had known the trust
proceeds had to pass through Thornburg before she received payment, she would have pursued other
methods of collecting the $85,000.00. Therefore, Alford contends the harm occurred when the
California court declared the Assignment null and void. 

 In deciding whether there is a disputed issue of material fact precluding summary judgment,
evidence favorable to the nonmovant will be taken as true, and every reasonable inference must be
indulged in favor of the nonmovant. McNamara, 71 S.W.3d at 311. According to Alford's
allegations, an injury has already occurred because she was not given the benefit of her bargain. In
other words, the divorce decree would not have any language concerning trust proceeds or life
insurance policies if Alford had known the trust proceeds would have to pass through Thornburg
before reaching her. Because this Court must take as true all evidence in Alford's favor and resolve
all reasonable inferences and doubts in her favor, this cause of action is ripe for determination, and
the trial court erred to the extent summary judgment was granted based on the doctrine of ripeness. 
See id.; Patterson, 971 S.W.2d at 442.

 c. Final Settlement Release and Order 

 On October 14, 1996, because of numerous lawsuits arising out of their 1995 divorce decree,
Alford and Thornburg agreed to a final settlement and release that was reduced to a court order. The
final settlement and release provided, in pertinent part: 

 The parties have both announced to the Court that they wish to settle all controversies
and disputes between them and go forward with their lives. Accordingly, [Alford]
and Thornburg hereby release each other from any and all claims, charges or other
complaints against the other which currently exist or may arise out of the parties'
relationship from 1991 forward, save and except [Alford]'s right to payment of
$85,000.00 from Thornburg under the terms of the Decree of Divorce, and
Thornburg's obligation with respect to the payment of premiums of a life insurance
policy for payment of this amount in the event of his death . . . .

 . . . .


 IT IS, THEREFORE, ORDERED, that both parties are permanently enjoined from
filing any lawsuits, motions or notices against the other party or from asserting any
claims, charges or complaints against the other party based upon any matters, other
than the rights of [Alford] specifically excluded by agreement above, arising between
the parties from 1991 to the date this order was signed.

Based on that order, Thornburg contends Alford is precluded from filing this lawsuit. On the other
hand, Alford contends this lawsuit is permissible because (1) the order expressly allows for a cause
of action to be brought for the purpose of collecting the $85,000.00, and (2) the agreement only bars
suits that arose between 1991 and October 14, 1996, and the present cause of action arose in 1999. 

 The same rules of interpretation apply in construing the meaning of a court order or judgment
as in ascertaining the meaning of other written instruments. Lone Star Cement Corp., 467 S.W.2d
at 404-05. The determinative factor is the intention of the court. Id. If a judgment is unambiguous
with no room for interpretation, it is our duty to declare its effect in light of the literal language used.
Ellis, 751 S.W.2d 721. On the other hand, an ambiguous order is construed in light of the motion
on which it was granted. Lone Star Cement Corp., 467 S.W.2d at 405.

 In the present case, the court merely adopted the parties' agreement and gave it the force of
a court order. The court intended to allow Alford the opportunity to collect the $85,000.00 in the
manner she had bargained for, which was to receive the trust proceeds directly from Augustine. 
Further, the contemplated Assignment had not been declared invalid at the time the order was
entered, and the parties, and the court, should be held to have intended its effectiveness. See id. 
Therefore, based on the court's obvious intent and based on the plain, unambiguous language of the
order, this cause of action was within the exception provided for, and the trial court erred to the
extent it granted summary judgment based on the final settlement, release, and order. 

5. Summary Judgment Affidavits

 At trial, Augustine objected to three of Alford's affidavits. First, Augustine objected to the
affidavit of Rick Lindsey, a Certified Public Accountant, on the ground that it failed to state any facts
on which his conclusions were based. Second, Augustine objected to the affidavit of Demaris Hart,
Alford's divorce attorney, on the grounds that it failed to state any facts to support her legal
conclusions, it contained hearsay, and Augustine never received the third and fourth pages of the
affidavit, which included the signature page. Third, Augustine objected to Alford's affidavit on the
grounds that it contained legal conclusions and hearsay. The trial court sustained Augustine's
objections and struck the affidavits of Lindsey and Hart in their entirety. The trial court, however,
only struck portions of Alford's affidavit. 

 Under the Texas Rules of Civil Procedure, supporting and opposing affidavits "shall be made
on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show
affirmatively  that  the  affiant  is  competent  to  testify  to  the  matters  stated  therein."  Tex.  R.
Civ. P. 166a(f); see Manges v. Astra Bar, Inc., 596 S.W.2d 605, 610 (Tex. Civ. App.-Corpus Christi
1980, writ ref'd n.r.e.). Conclusions of the affiant that have no factual support are insufficient to
raise an issue of fact, and hearsay statements contained in affidavits are not competent to serve as
summary judgment evidence. Ryland Group v. Hood, 924 S.W.2d 120, 122 (Tex. 1996);
Youngstown Sheet & Tube Co. v. Penn, 363 S.W.2d 230, 233 (Tex. 1962). 

 a. Lindsey's Affidavit

 Lindsey's affidavit consisted of the following statements:

 Due to life expectancies, there is a definite monetary difference between a
right to receive a sum certain upon the death of two people of different ages.

 I cannot calculate the definite monetary difference currently because I do not
have the birth date of Helen Thornburg. 


The basis of an expert witness' opinion may settle a dispute as a matter of law, not the witness'
credentials or his or her unsubstantiated opinions. Burrow v. Arce, 997 S.W.2d 229, 235 (Tex.
1999). Lindsey's statement, while admittedly not very extensive, simply states that the right to
receive a sum certain at death is valued differently for persons of different ages. That is something
a Certified Public Accountant, or anyone else familiar with life expectancy tables, would know. We
fail to see any difference Lindsey's affidavit could have made, but the trial court improperly struck
Lindsey's affidavit.

 b. Alford's Affidavit

 The trial court struck the following portions of Alford's affidavit:

 I knew Michael Augustine personally, and I trusted his word. He later sent
a confirmation letter about the assignment, including my requirement that he submit
to the jurisdiction of the Texas courts. This letter I received is dated December 11,
1995.

 I relied upon the representations of Michael Augustine and Tom Thornburg
that such an assignment could be made in agreeing to take it in the property division
of our divorce action. Michael Augustine even told us that we had to do something
in the alternative if Tom predeceased his stepmother. Hence, the language about life
insurance in the Decree of Divorce.


The trial court erred by striking these portions of the affidavit. The first sentence contains two
simple assertions: Alford's knowing Augustine and her trusting him. Then, beginning with the
second line, Alford is merely stating she received a letter from Augustine and the date on which it
was received. Alford had personal knowledge of when the letter was received and its contents, and
she would be competent to so testify at trial. See Tex. R. Civ. P. 166a. Further, the letter was
properly authenticated and admitted into evidence.

 Additionally, the last line concerning the statements allegedly made by Augustine to Alford
should not have been stricken from the affidavit. Under the Texas Rules of Evidence, a statement
is not hearsay if "[t]he statement is offered against a party and is the party's own statement in either
an individual or representative capacity." Tex. R. Evid. 801(e)(2). The statement in the affidavit
was offered against Augustine, and it purported to be his own. As a result, the statement is properly
admissible and should not have been stricken from the affidavit.

 Therefore, the trial court erred by striking portions of Alford's affidavit.


 c. Hart's Affidavit

 Under the Texas Rules of Civil Procedure, "[e]xcept on leave of court, the adverse party, not
later than seven days prior to the day of hearing may file and serve opposing affidavits or other
written response." Tex. R. Civ. P. 166a(c) (emphasis added). In the present case, Alford filed Hart's
affidavit in its entirety with the trial court at least seven days before the hearing. She failed to serve
the entire affidavit on Augustine before the seven-day deadline, and she did not request permission
from the court to serve the affidavit late. Specifically, Augustine objected to Hart's affidavit at the
hearing because he did not receive page three, which included the signature page. See Perkins v.
Crittenden, 462 S.W.2d 565, 568 (Tex. 1970) (unsworn affidavit not competent summary judgment
proof). Alford admitted that, through her own error, Augustine had not received page three of Hart's
affidavit before the hearing. At that point, it was incumbent on Alford to request leave of the trial
court to serve page three of the affidavit on Augustine or, at least, request a continuance in order to
respond to the objection. See Benchmark Bank v. Crowder, 919 S.W.2d 657, 663 (Tex. 1996) (if
nothing in record indicates that late service was with leave of court, it cannot be considered on
appeal); Flanagan v. Martin, 880 S.W.2d 863, 866 (Tex. App.-Waco 1994, writ dism'd w.o.j.)
(when movants for summary judgment file objections to affidavits on day of hearing, nonmovant
should ask for continuance for time to respond and failure to do so results in waiver of complaint
regarding lack of opportunity to amend affidavit). Because there is nothing in the record indicating
Alford did either of these things, the trial court properly did not consider Hart's unsworn affidavit,
and Alford has failed to preserve any error for appellate review relative to Hart's affidavit.

6. Augustine's Motion for Summary Judgment

 Augustine contends he is entitled to summary judgment because (1) this cause of action is
not ripe for determination, and (2) Alford has failed to produce any evidence of fraud or civil
conspiracy. (7) In a no-evidence motion for summary judgment, the nonmovant has the burden to
present more than a mere scintilla of evidence raising a genuine issue of material fact. Haas v.
George, 71 S.W.3d 904, 911 (Tex. App.-Texarkana 2002, no pet.). More than a scintilla of evidence
exists when the evidence would allow reasonable and fair-minded people to differ in their
conclusions. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995) (citing Transp.
Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994)). A no-evidence motion for summary judgment
is equivalent to a pretrial directed verdict, and the same legal sufficiency review applies. Tex.
Capital Sec. Mgmt., Inc. v. Sandefer, 80 S.W.3d 260, 264 (Tex. App.-Texarkana 2002, no pet.). 
Therefore, we consider all the evidence in the light most favorable to the party against whom the
no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences.
Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). 


 a. Fraud

 In his motion for summary judgment, Augustine alleged there was no evidence to raise a
genuine issue of material fact with regard to the following elements of Alford's fraud claim: (1) a
material representation from Augustine; (2) the material representation was false; (3) it was made
with knowledge of its falsity and made as a positive assertion; (4) it was made with the intent that
it be acted on by the plaintiff; and (5) it caused injury to the plaintiff. From our review of the record,
however, we find more than a scintilla of evidence raising a genuine issue of material fact with
respect to fraud by Augustine.

 First, there is more than a scintilla of evidence that Augustine made a material representation
with knowledge of its falsity to Alford. Alford set forth in her affidavit that Augustine dictated the
language to be used in the Assignment, which was later declared void because it violated the
spendthrift clause located in the trust. See McNamara, 71 S.W.3d at 311 (evidence in favor of
nonmovant taken as true). It is undisputed Augustine drafted the trust and was named as trustee. 
That evidence alone demonstrates that Augustine was aware of the provisions of the trust, yet he still
represented to Alford that the type of assignment called for was permissible under the terms of the
trust. See Transport Ins. Co. v. Faircloth, 898 S.W.2d 269, 285 (Tex. 1995) (any claim of fraud will
almost always depend on presence of circumstantial evidence). Alford, however, also introduced
a letter she received from Augustine on December 11, 1995, which provides in pertinent part:



 Dear [Alford]:


 Pursuant to our conversation of today's date, the fax from [Thornburg], my
conversation with [Thornburg], and my conversation with David Potter and Demaris
Hart, I am writing this letter to complete my acknowledgment of the lien on trust
proceeds which is apparently a part of the divorce settlement between you and
[Thornburg]. 

 . . . .


 By this letter, I also agree that I will be subject to the jurisdiction of the appropriate
Court in Texas with regards to that portion of the Thornburg Irrevocable Insurance
Trust proceeds, payable to you pursuant to Tom's assignment.


 Clearly, based on that evidence, reasonable minds and fair-minded people could differ as to
whether Augustine had made a representation with knowledge of its falsity. Further, it can be
inferred from the evidence produced by Alford that Augustine intended for Alford to agree to the
divorce settlement based on those representations. And, as previously discussed, Alford has suffered
an injury because she would have sought other means to collect the $85,000.00 had she known the
Assignment would be declared void. Therefore, Alford raised a genuine issue of material fact, and
the trial court erred to the extent summary judgment was granted against her claim of fraud. 

 b. Civil Conspiracy

 In addition to fraud, Augustine contends he is entitled to summary judgment with respect to
Alford's claim of civil conspiracy because she has failed to produce any evidence of the following: 
(1) a meeting of the minds of two or more people; (2) to accomplish some unlawful act or to
accomplish a lawful purpose by unlawful means; and (3) an injury was the result of the conspiracy.
See Transport Ins. Co., 898 S.W.2d at 278. Similar to fraud, civil conspiracy may be established by
circumstantial evidence that amounts to more than mere suspicion. See id.

 After reviewing the record in its entirety, we find no evidence establishing that Augustine
and Thornburg agreed to achieve a lawful purpose by unlawful means. See Haas v. George, 71
S.W.3d at 911. The only evidence presented by Alford to establish a meeting of the minds was the
above-mentioned letter, which provides in pertinent part: "Pursuant to our conversation of today's
date, my fax from [Thornburg], my conversation with [Thornburg] . . . ." Alford failed to set forth
any evidence, circumstantial or direct, that Augustine and Thornburg discussed the idea of
defrauding Alford. While evidence of this conversation may give rise to some suspicion, that is not
enough to raise a genuine issue of material fact. Transport Ins. Co., 898 S.W.2d at 278. Without
a showing of a meeting of the minds, there is no evidence of civil conspiracy and summary judgment
was proper with respect to that claim.

Conclusion

 We affirm the trial court's order directing Alford to release the abstract of judgment and the 
lis pendens. We reverse Thornburg's summary judgment and remand Alford's causes of action
against Thornburg to the trial court for further proceedings. We affirm Augustine's summary 



judgment with respect to Alford's civil conspiracy claim, but reverse it with respect to Alford's fraud
claim and remand that claim to the trial court for further proceedings.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 10, 2003

Date Decided: August 7, 2003




1. Alford has, at other times relevant to this proceeding, had the last name Lynch. For
consistency, we refer to her throughout as Alford.
2. Thornburg's stepmother had established a trust that would be funded on her death, and
Thornburg was designated as a beneficiary. 
3. At the time the Assignment was executed, Alford was unaware of the spendthrift clause, and
it is undisputed that Augustine was the attorney responsible for drafting the trust instrument. 
4. Thornburg was not discharged from bankruptcy until June 19, 2002. 
5. The bankruptcy court ruled that, because the present cause of action was declaratory in
nature, it did not violate the automatic stay. 
6. In support of her contention, Alford relies on Samara v. Samara, 52 S.W.3d 455 (Tex.
App.-Houston [1st Dist.] 2001, pet. denied). Samara, however, does not support the proposition
for which it was cited.
7. For the same reasons set forth previously, in part 4 of this opinion, titled Thornburg's
Motion for Summary Judgment, this cause of action is ripe for determination. Therefore, we will
only address whether the trial court properly granted summary judgment with respect to Augustine's
no-evidence motion. 


ht to represent themslef [sic] on appeals.  Unlike Kennedys other appeal that we decide
today, in this case, there is no request for damages.

            We
recognize that this lawsuit in many ways is a mirror image of a suit which he
raised (which was dismissed) and which we affirmed in Kennedy v. Wortham,[4]
314 S.W.3d 34 (Tex. App.Texarkana 2010, pet. denied).  Further, it is largely an attempt through a
civil lawsuit to collaterally attack his criminal conviction and the criminal
procedures being used to provide a new sentencing hearing.   

            In
his brief on appeal, the issues raised in his combined brief for both appeals
are only partially congruent with his pleading in this proceeding.  In relevant part, Kennedy argues that the
trial court erred by dismissing his petition because all four of the district
judges of Anderson County as named in his petition should have recused themselves
because they were named as defendants in the original complaint of violations;
thus, the petition should not have been dismissed.[5]  He also argues that 

12th Court of Appeals justices should not have
recused themslef [sic] from appeals and when this claims based on trial judges
should not have rule or dismiss this suit apply as 12th Court of Appeals
justices to recuse themslef [sic] from ruling on complaint or dismissing suit
on themslef [sic].  

 

            Kennedy
goes on to contend that because he named every district judge in Anderson
County as defendants, none of them could rule on his petition.  He contends that the Texas Court of Criminal
Appeals, the Twelfth Court of Appeals, and District Judge Mark Calhoon acted in
racial discrimination to deny him a right to represent himself by appointing
House to forclose [sic] his innocnce [sic] when no crime committed. 

            There
is no argument in his brief addressing either the Ninth Court of Appeals or the
Fifth Circuit Court of Appeals.

Disqualification or Recusal

            This Court has already twice
addressed a claim by Kennedy that a trial judge was required to remove herself
from a lawsuit brought by him.  In our
published opinion, Kennedy v. Wortham,
314 S.W.3d 34 (as well as in the companion memorandum opinion), we concluded,
among other things, that because Kennedy had not sought money damages, the
constitutional disqualification provision did not control, and as he had no
direct pecuniary or personal interest in the case, the judge that ruled on the
cases was not disqualified.  

            Unlike
the companion case also decided today, in this case, Kennedy did not request
monetary damages.  On the issue of
disqualification, it is thus on all fours with our prior opinion in Kennedy v. Wortham.  For the reasons stated there, we conclude
that the trial judge who signed this judgment was not disqualified and thus had
the authority to dismiss the lawsuit. 

            Kennedys
remaining issues in this appeal involve the Tyler and Beaumont Courts of
Appeals.  We note that Kennedy has been a
more prolific user of the legal system than any individual in our collective
memory.  According to court records,
since 1988, with the lions share being filed since 2004, Kennedy has had over
250 proceedings in front of various courts of appeals and both high courts in
this State. 

            In
his four most recent appeals, and in a mandamus decided by this Court, he has
shifted tactics, seeking to obtain different judges by raising allegations of
matters that would normally mandate the appointment of a different judge.  By naming all judges as defendants, alleging
without supporting allegations of facts that they were all involved in a vast
conspiracy to convict an innocent man, Kennedy has discovered a method by which
he has manipulated the system to obtain a judgefrom a different region or countyone
presumably more to his liking, both at the trial and appellate level.  

            Kennedys
briefing does not separately attack any failure to follow recusal procedures by
the judge, but his statement for recusal was neither the subject of a motion as
contemplated by Tex. R. Civ. P. 18a,
nor was the pleading verified as required by the rule.  Vargas
v. State, 883 S.W.2d 256 (Tex. App.Corpus Christi 1994, pet. refd).  Thus, the mandatory provisions requiring
referral were not triggered. 

            When
a recusal motion is filed, the trial judge against whom the motion is directed
may properly make an initial decision of whether the motion conforms with Rule
18a.  Barron
v. State Attorney Gen., 108 S.W.3d 379, 382 (Tex. App.Tyler 2003, no pet.);
Moorhead v. State, 972 S.W.2d 93, 95
(Tex. App.Texarkana 1998, no pet.).  Recusal
may be waived if it is not raised by a proper motion.  McElwee
v. McElwee, 911 S.W.2d 182, 185 (Tex. App.Houston [1st Dist.] 1995, writ
denied).  The procedural requisites for
recusal in Rule 18a(a) are mandatory, and a party who fails to conform waives
his right to complain of a judges failure to recuse himself.  Spigener
v. Wallis, 80 S.W.3d 174, 180 (Tex. App.Waco 2002, no pet.); Gill v. Tex. Dept of Criminal Justice, Inst.
Div., 3 S.W.3d 576, 579 (Tex.
App.Houston [1st Dist.] 1999, no pet.); Pena
v. Pena, 986 S.W.2d 696, 701 (Tex. App.Corpus Christi 1998, pet.
denied).  Thus, the provisions of Rule
18a obligating a trial judge to either recuse himself or refer the motion to
the presiding judge of the administrative judicial district never come into
play unless and until a formal, timely, written, and verified motion to recuse
is filed.  Spigener, 80 S.W.3d at 180; Moorhead,
972 S.W.2d at 95; Limon v. State, 632
S.W.2d 812, 81516 (Tex. App.Houston [14th Dist.] 1982, pet. refd).  Thus, if we read his issues to include an
attack on the failure to refer the case to the administrative judge, that issue
fails.

On the Merits

            Did the trial court abuse its
discretion by dismissing Kennedys lawsuit as frivolous?  The issue is whether the complaint lacks an
arguable basis in law or in fact.  Johnson v. Lynaugh, 796 S.W.2d 705, 706
(Tex. 1990).  

            In
our opinion in cause number 06-10-00119-CV, issued this day, the same issues
were raised in Kennedys underlying petitions and the common brief makes no
distinction between the two separate appeals. 
The matters addressed in that opinion on its merits include the issues
before this Court, and for the reasons stated in that opinion, we likewise in
this appeal conclude that the underlying lawsuit was frivolous and that the
trial court did not abuse its discretion by so determining, and by dismissing
the suit.

            We
affirm the judgment.

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          February
11, 2011

Date Decided:             March
1, 2011











[1]Kennedy
has recently been incarcerated within the Twelfth Appellate District.  The justices of the Twelfth Court of Appeals recused
themselves from the cases and the Texas Supreme Court transferred them to this
Court.  We are unaware of any conflict
between precedent of the Twelfth Court of Appeals and that of this Court on any
relevant issue.  See Tex. R. App. P.
41.3.

 





[2]Kennedy
has a second appeal before this Court, also decided this day.  He filed a single brief covering both this
appeal and his appeal in cause number 06-10-00119-CV.  





[3]Kennedy v. State, 12-08-00246-CR (Tex.
App.Tyler Dec. 16, 2009, pet. denied). 
The petition for discretionary review was disposed of by the Texas Court
of Criminal Appeals on April 15, 2010, and its mandate issued on April 30,
2010.  The new sentencing hearing was
held on January 26 and 27, 2011.  His
original sentence was for sixty-two years, this time the jury assessed a
ninety-nine-year sentence.

 





[4]The
first defendants name here listed by Kennedy (Wortham), is a misspelling or misnomer.  Kennedy apparently intended to name the chief
justice of the Twelfth Court of Appeals in Tyler, the Honorable James Worthen. 





[5]Although
not named as defendants in his lawsuit, Kennedy also lists the Fifth Circuit
Court of Appeals of the United States as a defendant in the list provided in
his brief.